UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
RAMONA RIZZO, et al.,

                    Plaintiffs,

              -against-

THE UNITED STATES OF AMERICA, et al.,

                  Defendants.
-------------------------------------------------------- x

**REPORT AND RECOMMENDATION**
17 MC 1415 (MKB)(CLP)

**POLLAK**, United States Magistrate Judge:

On May 16, 2017, plaintiffs Ramona Rizzo, Eugenia Sclafani, and Stacey Sclafani ("plaintiffs"),[1] proceeding *pro se*, filed this action against the United States of America and the United States Drug Enforcement Administration ("DEA") (together, the "government"), pursuant to 18 U.S.C. § 983(e), seeking to set aside the administrative forfeiture of various items of jewelry seized by the DEA on or about August 10, 2011.  By Notice of Motion dated April 11, 2018, the government moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the plaintiffs' action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

For the reasons set forth below, the Court respectfully recommends that the government's motion be granted.

---

[1] The government notes that although the caption of the initial Motion to Set Aside Forfeiture Under 18 U.S.C. § 983(e) also lists Giovanni Khatib, Annissa Khatib, Melina Khatib, and Gianna Khatib, who are described as "Ramona's Children" and Augustus Sclafani, who is referenced "posthumously," none of these individuals signed the original Motion.  Thus, from the docket sheet, it appears that only Ramona Rizzo, Eugenia Sclafani, and Stacey Sclafani are plaintiffs in this action.  (See Memorandum of Law in Support of the United States of America's Motion to Dismiss ("Govt. Mem.") at 1, n.1).

## FACTUAL BACKGROUND

According to the government's Memorandum, on or about August 10, 2011, the DEA arrested Joseph Sclafani and charged him with drug-related offenses pursuant to 21 U.S.C. §§ 846 and 841. (Govt. Mem.[2] at 2 (citing United States v. Joseph Sclafani, et al., No. 11 MJ 0816, ECF No. 9)). In connection with the arrest, a search warrant (the "Warrant") was executed on Joseph Sclafani's home located at 71 Wheeling Avenue, Staten Island, New York. (Id. (citing United States v. The Premises Known and Described as a Residence Located at 71 Wheeling Avenue, Staten Island, New York, No. 11 MJ 820, ECF No. 2)). Agents determined, based on the execution of the Warrant, that Sclafani lived in the home with his parents, Augustus Sclafani and Eugenia Sclafani, and that his fiancée, Ramona Rizzo, often stayed with him at the home. (Id. at 2, n. 2 (citing Declaration of Michelle O'Toole, dated April 11, 2018 ("O'Toole Decl.") ¶ 5)). Pursuant to the Warrant, agents seized an assortment of jewelry from Sclafani's bedroom. (Id. (citing Seized Assets Appraisal, attached as Exhibit C to Plaintiffs' Motion, ECF No. 1)).[3]

The Grand Jury returned a superseding indictment on September 7, 2011, charging Sclafani, along with others, of conspiring to distribute cocaine, distribution of cocaine, conspiracy to distribute marijuana, and marijuana distribution, in violation of 21 U.S.C. §§ 841, and 846. United States v. Levine, No. 11 CR 0345, ECF No. 13. Subsequently, the Grand Jury returned two more superseding indictments against Sclafani on February 8, 2012 and March 21, 2012. Id., ECF Nos. 36, 53. Thereafter, on April 11, 2013, Sclafani entered a plea of guilty to a charge of conspiracy to distribute cocaine. Id., ECF No. 178. Sclafani was sentenced to a period of 180 months incarceration and three years of supervised release. Id., ECF No. 250. As a

---

[2] Citations to "Govt. Mem." refer to the government's Memorandum of Law in Support of the United States of America's Motion to Dismiss, dated April 11, 2018, ECF No. 11-2.
[3] Agents also seized 196 grams of cocaine, a drug ledger, and a digital scale. (O'Toole Decl. ¶ 4).

condition of sentencing, the court ordered the forfeiture of a forfeiture money judgment in the amount of $500,000.00. Id., ECF No. 235.

According to the government, on October 5, 2011, the DEA sent notice of the seizure and intention to forfeit the jewelry seized from Sclafani's home on August 10, 2011 ("Seizure Notice"). (See Rashid Decl.[4] ¶¶ 4(b), 4(c), and Exs. 1, 3). The Seizure Notice, issued pursuant to 19 U.S.C. § 1607(a) and 18 U.S.C. § 983(a), was sent by certified mail, return receipt requested, to Joseph Sclafani at his Staten Island address and to the Metropolitan Detention Center ("MDC"), Brooklyn, New York. (Id. ¶¶ 4(b), 4(c), Exs. 2, 4). At the same time, the DEA also sent the Seizure Notice, by certified mail, return receipt requested, to Gus Sclafani and Eugenia Sclafani at the 71 Wheeling Avenue address in Staten Island. (Id. ¶¶ 4(d), 4(e), Exs. 5, 7). All four of the Seizure Notices sent to the Sclafanis were signed in the signature block, indicating that delivery of the Notice was accepted. (Id. ¶¶ 4(b), 4(c), 4(d), 4(e)).

The Notices advised the recipients that "procedures to administratively forfeit [the jewelry] are underway" and advised the recipients of the two available procedures for requesting the return of the property: either by petitioning the government for "remission or mitigation of forfeiture" or, either in addition to or in lieu of petitioning for remission, by filing a claim to contest the forfeiture of the property in United States District Court.[5] (Id., Exs. 1, 3, 5, 7). The Notices stated that a petition for remission or mitigation must be filed within thirty (30) days of

---

[4] Citations to "Rashid Decl." refer to the Declaration of Vicki L. Rashid, DEA Forfeiture Counsel, dated October 31, 2017, ECF No. 11-3.

[5] To initiate a claim to be litigated in United States District Court, a claim must first be filed with the forfeiture counsel of the DEA. To initiate the process for remission or mitigation of forfeiture, a petition must be filed, also with the forfeiture counsel of the DEA. The Notices further outlined other distinctions between a claim to be litigated in federal court and a petition for remission or mitigation: a claim is filed to "contest the forfeiture of the seized property" and is litigated in federal district court, while a petition for remission or mitigation "does not serve to contest the forfeiture, but rather is a request for executive pardon of the property based on the petitioner's innocence, or, for a wrongdoer, on a plea of leniency." (Id., Ex. 25 (citing United States v. Vega, 72 F. 3d 507, 514 (7th Cir. 1995), cert. denied Early v. United States, 518 U.S. 1007 (1996)).

receipt of the Notice and must include "proof of your interest in the property and state the facts and circumstances which you believe justify remission or mitigation." (Id. (citing 28 C.F.R., Part 9)). The Notices also listed in bold the deadline to instead contest the forfeiture in federal court by filing a claim with Forfeiture Counsel of the DEA. (Id.) The Notice stated that a claim to be litigated in court must "identify the specific property being claimed; state the claimant's interest in such property; and be made under oath[.]" (Id.) Each of the Seizure Notices sent to the Sclafanis listed November 9, 2011 as the deadline for filing if they wished to proceed in court, and each gave detailed instructions as to what information was required and where any submissions were to be sent. (Id.)

The Seizure Notice was also sent to Ramona Rizzo at 127 Waterbury Avenue, Staten Island, New York. The first copy of the Seizure Notice, sent on October 5, 2011, was returned to the DEA on November 9, 2011, with the notation: "Return to Sender, Unclaimed, Unable to Forward." (Id. ¶ 4(f), Exs. 9, 10). After confirming that 127 Waterbury Avenue was in fact the correct address for Ramona Rizzo, the DEA re-sent the Seizure Notice on November 17, 2011. (Id. ¶ 4(h), Ex. 12). The second Seizure Notice contained the same information as the four sent to the Sclafanis but listed the date of December 22, 2011 as the date to file a claim to be litigated in federal court. (Id.) This Notice was not returned to the DEA. (Id.)

Pursuant to 19 U.S.C. § 1607(a), the DEA also published Notice of the property seizure in the *Wall Street Journal* once a week for three successive Mondays on October 17, 24, and 31, 2011. (Id. ¶ 4(g)). Like the mailed notices, the published version explained the options of filing a petition for remission or mitigation of the forfeiture or filing a claim to be litigated in district court. (Id.). The published Notices listed the deadline for filing a claim as December 1, 2011, if the mailed Notice had not been received. (Id.)

On November 9, 2011, Timothy C. Parlatore, Esq., wrote a letter to the DEA forfeiture counsel as a claim to be litigated in court on behalf of Joseph Sclafani, Ramona Rizzo, Augustus Sclafani, and Eugenia Sclafani, which was received by the DEA on November 16, 2011.  (Id. ¶ 4(i)).  The letter stated that Parlatore's "clients contest the forfeiture as none of this jewelry represents the proceeds of any criminal activity."  (Id., Ex. 13).  On December 15, 2011, the DEA sent a letter to Parlatore with respect to the claim of Joseph Sclafani, Augustus Sclafani and Eugenia Sclafani, indicating that their claim was being returned because it was received after November 9, 2011, the last date to file.  (Id., Ex. 16).  The letter further noted, however, that even though a petition for remission or mitigation from the DEA was not filed with the rejected claim seeking litigation in court, the Sclafanis were given thirty (30) days from the receipt of the letter to file such a petition.  (Id.)  The letter reminded the Sclafanis that the petition "must be sworn to under penalty of perjury."  (Id.)  The certified mail receipt was signed by someone as received in Parlatore's office.  (Id., Exs. 15, 15a).

Ramona Rizzo's claim to be litigated in court was also rejected even though timely filed because it failed to meet the requirements of 18 U.S.C. § 983(a)(2)(C).  (Id. ¶ 4(j), Ex. 14).  In a letter dated December 15, 2011, the DEA notified Ramona Rizzo, through her attorney, Parlatore, that her submission failed to state her interest in the property, 18 U.S.C. § 983(a)(2)(C)(ii); she did not sign the submission, 18 U.S.C. § 983(a)(2)(C); and she failed to make the submission under oath. 18 U.S.C. § 983(a)(2)(C)(iii).  (See id., Ex. 14).  The letter informed Ms. Rizzo that she had twenty (20) days from the date of the receipt of the letter to cure the deficiencies noted and file a valid claim.  (Id.)  The certified mail receipt for Ms. Rizzo's letter was also signed as received on December 27, 2011.  (Id., Exs. 15, 15a).

On January 30, 2012, the DEA received a letter from Parlatore, dated January 23, 2012, signed by Augustus Sclafani, Eugenia Sclafani, and Ramona Rizzo, listing 45 pieces of jewelry and requesting that they be returned. (Id. ¶ 4(l), Ex. 17). In response, the DEA set a letter to Parlatore, advising that if the letter was intended as "a claim, the time period to file a claim had expired." (Id., Ex. 18). Ms. Rizzo's time to file a claim to be litigated in court had expired on January 16, 2012 since she had been given 20 days from receipt of the December 15, 2011 letter to cure the earlier deficiencies and file a claim, and therefore, her claim received on January 30, 2012 was untimely. (Id. ¶ 4(m), Ex. 18). The DEA's letter further indicated that if the letter was a claim being made on behalf of Augustus and Eugenia Sclafani, their time to file a claim had expired on November 9, 2011, and the only available option was for them to seek the return of the forfeited property through a petition for remission or mitigation of forfeiture from the DEA. (Id.) However, the DEA indicated that it would consider the submission dated January 23, 2012 as a petition for remission or mitigation of forfeiture. (Id.) The certified mail receipt was signed as accepted for delivery. (Id., Ex. 19).

On May 16, 2012, the DEA sent a letter acknowledging the petition for remission or mitigation of the forfeited property on behalf of Augustus Sclafani, Eugenia Sclafani, and Ramona Rizzo, and advising them that an investigation would be required before the DEA could rule on the petition. (Id. ¶ 4(n), Ex. 20). On that same day, a second letter was sent to Parlatore, indicating that Joseph Sclafani's submission of January 23, 2012 was not being considered as a petition because he had failed to sign the petition under oath as required by 21 C.F.R. § 1316.79(a) and 28 C.F.R. § 9.3(e)(2). (Id. ¶ 4(o), Ex. 22). The letter gave Joseph Sclafani thirty (30) days to correct the deficiencies and file a proper petition. (Id.) Both letters, sent by certified mail to Parlatore, were received and the signature blocks signed. (Id., Ex. 21).

According to the Declaration of Forfeiture Counsel John Hieronymus, since no successful claim to contest the seizure of the property was filed within 30 days of the date of the last publication of the Notice, the property was forfeited to the United States pursuant to 19 U.S.C. § 1609 on May 17, 2012.  (Id. ¶ 4(p), Ex. 24).  Thereafter, plaintiffs' sole remedy for seeking return of the forfeited property was their petition for remission or mitigation of the property from the DEA, for which the decision whether or not to grant is "made solely at the discretion of the Attorney General."  (Id., Ex. 25 (citing 21 U.S.C. § 881(d); 19 U.S.C. § 1618)).

On June 20, 2012, as part of the investigation required to rule on the petition for remission or mitigation of the forfeited property, the DEA conducted interviews of Ramona Rizzo in the presence of her attorney, Parlatore.  (O'Toole Decl. ¶ 6).  Rizzo was informed that if she provided documentation regarding the source of the jewelry, it was possible that it might be returned to her.  (Id. ¶ 8).  Similarly, when Augustus Sclafani and Eugenia Sclafani were interviewed on July 12, 2012 and then again on February 13, 2013, both times accompanied by counsel,[6] they were told to provide documentation relating to the seized jewelry, including evidence of the jewelry's legitimate source.  (Id. ¶ 7; see also Govt. Mem. at 8).

By letter dated October 15, 2012, the DEA sent a letter to Parlatore indicating that the petition submitted by Augustus and Eugenia Sclafani and Ramona Rizzo had been denied because petitioners had failed to carry their burden of establishing the basis for granting a petition for remission or mitigation of the forfeited property, which the letter described as an "act of grace," not "a right nor a privilege."  (Rashid Decl., Ex. 25 (citing In re the Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,467.00) [sic] v. United States, 901 F.2d

---

[6] According to Ms. O'Toole's Declaration, the Sclafanis were accompanied by Natasha Marosi, Esq. at the first interview and by Parlatore during the second interview.  (O'Toole Decl. ¶ 7).

1540, 1543 (11th Cir. 1990))).  The letter further explained that because petitioners chose to proceed with a petition for remission or mitigation, they waived any right they may have had to judicial review of the merits of the administrative determination.  (Id. (citing United States v. One 1970 Buick Riviera Bearing Serial No. 494870H910774, 463 F.2d 1168, 1170 (5th Cir.), cert. denied, 409 U.S. 980 (1972); Conservation Force v. Salazar, 646 F.3d 1240, 1243 (9th Cir. 2011); Martin v. Leonhart, 717 F. Supp. 2d 92, 99 (D.D.C. June 15, 2010); Conservation Force v. Salazar, 646 F.3d 1240, 1243 (9th Cir. 2011))).

As for the explanation as to why the petition was being denied, the letter recited the requirements of the federal regulations that must be established by petitioners or else remission is "explicitly prohibit[ed]."  (Rashid Decl., Ex. 25 at 2).  Specifically, the letter explained that petitioners had to demonstrate:  "1. A valid, good faith, and legally cognizable interest in the seized property as an owner or lienholder; and 2.  Qualification as an 'innocent owner' within the meaning of the applicable civil forfeiture statute."  (Id.)  The letter further explained that the investigation revealed "probable cause to believe that illicit, drug-related funds were used to purchase the forfeited property," and that the burden was on petitioners to prove that "the funds used to purchase the jewelry came from an independent, non-drug-related source."  (Id.)  Acknowledging that the petitioners were claiming that the majority of the jewelry belonged to Ramona Rizzo, the letter stated that petitioners had been unable "to produce any documents indicating a legitimate source for the forfeited jewelry," and that their interest in the property must be "supported by credible documentary evidence."  (Id.)  The Senior Attorney reviewing the petition noted that, despite the failure of the petitioners to establish the necessary elements to justify remission, he had "re-examined the petition to determine whether extenuating circumstances exist[ed] to warrant mitigation of the forfeiture."  (Id. at 3).  He determined that

none had been demonstrated and that the administrative forfeiture "was entirely proportional to the offense." (Id.)

The letter concluded by noting that the petitioners could make one request for reconsideration of the denial of the petition, but any request must be based on evidence not previously considered. (Id. (citing 28 C.F.R. § 9.3(j))). The letter set the deadline for such requests at 10 days from receipt of the letter. (Id.)

On November 21, 2012, the DEA received a letter from Parlatore requesting reconsideration of the denial of the petition. (Id., Ex. 27). The letter expressed Parlatore's "shock[]" at the reasons for the denial of the request for remission, stating that in his discussions with the agents, they had not disputed the origin of the jewelry, but were focused on his clients' knowledge of Joseph Sclafani's criminal conduct. (Id.) The letter asserted that "[m]uch of the jewelry at issue was received as gifts or purchased many years ago . . . " and "Ms. Rizzo had not been dating Mr. Sclafani for very long at the time of the seizure." (Id.) Among other things, the letter cited a wedding band purportedly from Ms. Rizzo's prior marriage, included a receipt from London Jewelers, reflecting the sale of two of the items of seized jewelry, and included some photographs of the jewelry being worn by Rizzo at a party on October 23, 2010, prior to Rizzo's relationship with Joseph Sclafani. (Id. ¶ 4(r), Ex. 27). Indeed, according to Parlatore's letter, much of the jewelry belonging to Rizzo was "all found still packed in a bag, as she had only just moved into Mr. Sclafani's apartment days prior to the seizure." (Id., Ex. 27).

The letter also stated that Parlatore had spoken with the designer of several pieces of the jewelry and she confirmed that Ms. Rizzo and her ex-husband had been customers, but that she had never sold any jewelry to Mr. Sclafani. (Id.) The designer apparently also told Parlatore that she did not have records dating back to the purchase of these items, but that if she were

shown photographs, she could confirm if they were her pieces and when they were made. (Id.) In the letter, Parlatore also indicated that he was obtaining an affidavit from Ms. Rizzo's ex-boyfriend who purchased the seized Bulgari bracelet and would be sending the affidavit when he received it. (Id.) The letter further stated that the IRS had previously seized and held some of the jewelry as collateral for Ms. Rizzo's ex-husband's unpaid taxes and Parlatore was attempting to obtain that information. (Id.)

As for the jewelry owned by the Sclafanis, Parlatore included photographs of Joseph Sclafani from 1968 and from a time 17 years earlier wearing some of the jewelry and noting that the conspiracy dated only from 2005. (Id.) He also enclosed photographs of Ms. Sclafani wearing certain jewelry and noting that most of the jewelers from whom her pieces had been purchased were deceased. (Id.) As for a pair of cufflinks that Mr. Sclafani had received as part of a wedding party, Parlatore indicated that he was attempting to get an affidavit from the groom regarding the cufflinks. (Id.)

Following receipt of the letter, the DEA conducted another interview of Ramona Rizzo on February 4, 2013. (O'Toole Decl. ¶ 6). During this interview, Ms. Rizzo, accompanied by her attorney Parlatore, provided some scanned photographs of Rizzo wearing certain of the seized jewelry, "including evidence of the jewelry's legitimate source." (Id. ¶ 8; Rashid Decl. ¶ 4(r), Ex. 27). Additional interviews of Augustus and Eugenia Sclafani were also conducted, and agents were provided with a letter from Vincent Sclafani asserting an interest in one of the seized items. (Rashid Decl. ¶¶ 4(r), 4(s), Exs. 27, 28).

On July 14, 2015, the DEA sent a letter to Parlatore, denying the request for reconsideration of the petition for remission or mitigation. (Rashid Decl., Ex. 28). According to the letter, petitioners had been given "numerous warnings" that they had to provide

documentation showing a legitimate origin for each piece of jewelry and they were reminded in June 2012 of this obligation to provide documentation. (Id.) The letter stated that pursuant to the request for reconsideration, an additional investigation was undertaken in which the investigating agent requested that petitioners produce "tax returns and associated documents and documentation of legitimate income during the timeframes when items were allegedly purchased." (Id.) With respect to gifts, petitioners had been told to provide affidavits from the person who gave the gift, "as well as documentation of legitimate income from the timeframe when the item was purchased." (Id.) According to the letter, counsel was "reminded multiple times" that documentation was needed, including phone messages left on January 2, 2013, January 9, 2013, and January 15, 2013. (Id.) When the interviews were finally scheduled, the agent reminded counsel of the need for documentation for each item. (Id.)

Referring to the photographs of Ms. Rizzo wearing the "flower" jewelry, the July 14, 2015 letter noted that only items 6, 23, and 24 appeared in the photographs,[7] and there was no documentation provided to show that the items were purchased with legitimate income. (Id.) As for the Bulgari watch shown as worn by Joseph Sclafani, the letter noted that there was no documentation presented showing that it had been purchased with legitimate income. (Id.) With respect to the receipts from London Jewelers referencing items 33 and 34, the letter notes that the receipts only establish that the items were not stolen; no affidavit from Rizzo's ex-husband had been provided and no proof of legitimate employment or tax returns were submitted for the timeframe in which the jewelry was purchased. (Id.)

Although Parlatore's earlier letter had indicated that he would be submitting an affidavit from Rizzo's former boyfriend as to the Bulgari bracelet, item 21, no such affidavit had been

---

[7] The claim for remission sought return of items 6, 9, 10, 11, 23, 24, 31 and 48. (Rashid Decl., Ex. 28).

provided, nor had there been presented any evidence of legitimate income.  (Id.)  Despite

representations that Rizzo would provide receipts and purchase information for Items 19, 20, 43,

and 47, which had allegedly been purchased from a Cartier store on Long Island, no such

information had been provided, nor had there been proof of legitimate source of income during

that time period.  (Id.)  As for the St. Christopher medal that Rizzo claimed had been handed

down to her from her grandfather, the letter indicated that there was no documentation to show

that the item was a gift, and no affidavit and no documentation to show it was purchased with

legitimate income.  (Id.)  The request for the return of her wedding band was denied because

Rizzo had not identified the item on the list and she had not provided an affidavit from her

former husband.  (Id.)

According to the July 14, 2015 letter, during the interview with the Sclafanis, held on

February 5, 2013, Mr. Sclafani identified item 25, a liberty coin pendent necklace, as an item he

had purchased for Ms. Sclafani in or around 1976.  (Id.)  Although he claimed he was working as

a longshoreman at the time, he did not provide any documentation of such income and the

request for remission was denied on this basis.  (Id.)

With respect to item 49, a gold ring with diamonds, Parlatore presented a letter from

Vincent Sclafani claiming that the ring was his.  (Id.)  The claim was rejected because it was not

presented in the form of a sworn affidavit and there was no proof of income used to make the

purchase.  (Id.)  It was further noted in the letter that up until that point in the process, no one

had claimed that any of the items seized belonged to someone other than the petitioners.  (Id.)

The Sclafanis' requests for return of items 5, 7, and 36 were similarly denied because they failed

to provide documentation that the items were gifts or that they were purchased with legitimate

income.  (Id.)

According to the July 14, 2015 letter, the investigating DEA agent had sent Parlatore an email on February 13, 2013, after the interviews, requesting further documentation. (Id.) No such documentation was received. (Id.) According to the letter, petitioners had provided no additional documentation in the two and one-half years since the 2013 interviews. (Id.) The letter noted that under C.F.R. § 9.3(j)(3), only one request for reconsideration is allowed and therefore, no further requests would be considered. (Id.) However, the letter concluded with Forfeiture Counsel stating that she had reviewed the petition to determine if mitigating circumstances existed and concluded that petitioners had failed to establish grounds for mitigation. (Id.)

Thereafter, following the denial of the petition for reconsideration, the items of seized jewelry were disposed of sometime during the period between October 15, 2015 and February 2, 2016. (O'Toole Decl. ¶ 9).

On May 16, 2017, after failing to recover the jewelry by either properly filing a claim or a petition, Ramona Rizzo, Eugenia Sclafani and Stacy Sclafani[8] ("plaintiffs") commenced this proceeding *pro se* by filing a motion pursuant to 18 U.S.C. § 983(e), seeking to set aside the forfeiture of the seized jewelry. In their motion, plaintiffs claim that only Joseph Sclafani received notice of the seizure and that plaintiffs' procedural due process rights were violated. (Mot.[9] at 6).[10] The plaintiffs also claim that most of the seized items belong to them and that the lead DEA agent stated that the property would not be seized. (Id. at 3-10). Indeed, Ms. Rizzo claims that during an interview with DEA agents, she was told that if she cooperated, she would

---

[8] According to the government, Stacy Sclafani appears to be the sister of Joseph Sclafani. (Govt. Mem. at 11, n. 3).
[9] Citations to "Mot." refer to the plaintiffs' *pro se* Motion to Set Aside Forfeiture, dated May 16, 2017, ECF No. 1.
[10] However, Eugenia Sclafani admits that she received a copy of the Seizure Notice sent to Joseph Sclafani at the MDC, and thus had actual notice of the seizure. (Mot. at 12).

get her jewelry back. (Id.) Finally, in the motion, plaintiffs note that a Judicial Order of Forfeiture was entered at the time of Joseph Sclafani's sentencing on August 19, 2013. (Id.)

In their response to the government's motion to dismiss, plaintiffs, who now have counsel, challenge the initial seizure of the items on several other grounds: 1) the criminal charges against Joseph Sclafani had nothing to do with plaintiffs; 2) Eugenia Sclafani lived on the second floor in what was "for practical purposes" a separate residence from Joseph Sclafani's home on the first floor of the building; 3) Eugenia Sclafani had been married since the 1960s and amassed jewelry over several decades; 4) Ramona Rizzo had "only recently" moved in with Joseph Sclafani and "there could not have been any serious confusion over which chattels were owned by which individual;" 5) Rizzo had been married previously and obtained most of the jewelry through prior relationships. (Pls.' Br.[11] at 2-3; see also Sclafani Decl.[12] ¶¶ 2-5; Rizzo Decl.[13] ¶¶ 6-9). Plaintiffs claim that these assertions are "beyond serious dispute" and plaintiffs find it "difficult to understand why [the DEA] persists in suggesting that the property came from Joseph Sclafani's criminal activity approximately 10 years ago." (Pls.' Br. at 3).

In their motion, plaintiffs acknowledge that the agents seized the items of jewelry during "the search of the first floor residence of Joseph Sclafani," but insist that the majority of the items were personal property of the plaintiffs and that the agents stated they would not be seizing anything that did not belong to Joseph Sclafani. (Mot. at 3). Indeed, of the 63 items of jewelry seized, plaintiffs claim that "only five of the pieces seized" belonged to Joseph Sclafani, who identified the items for the seizing agents. (Id. at 5 (identifying 1, 2, 4, 37, and 38 as the items

---

[11] Citations to "Pls.' Br." refer to the Brief and Declarations in Support of Plaintiffs' Notice of Motion dated July 29, 2018, ECF No. 18.
  [12] Citations to "Sclafani Decl." refer to the Declaration of Eugenia Sclafani, dated July 25, 2018, ECF No. 18-1.
  [13] Citations to "Rizzo Decl." refer to the Declaration of Ramona Rizzo, dated July 26, 2018, ECF No. 18-2.

belonging to Joseph Sclafani)).  Plaintiffs claim that based on an appraisal by Carats by Stacey, Inc., the value of the items belonging to plaintiffs is approximately $162,750.00 "wholesale." (Id.)

Plaintiffs assert an "innocent owner" defense in their motion and insist that the majority of the jewelry belonging to Ramona Rizzo was given to her by her former husband, Wael Al-Khatib, "a wealthy Business man that owned a Communications network."  (Id.)  Plaintiffs suggest that his testimony, along with that of his daughter, an attorney, would corroborate the dates when the items were purchased.  (Id. at 9).  In addition, Ms. Rizzo would present the testimony of her friends to verify that the items were purchased during 2007 to 2009 when Ms. Rizzo was in Jordan.  (Id.)

Ms. Rizzo further claims that during her interview with the DEA, she was told that if she cooperated with them, her jewelry would be returned.  (Id. at 11).  She asserts that this is an acknowledgement on the part of the agents that the jewelry belonged to her.  (Id.)  She claims that because she could not assist them in their investigation of Joseph Sclafani's drug conspiracy, the agents "acted arbitrarily and punitively" by keeping her jewelry.  (Id.)

Plaintiffs further claim that they were never given notice of the seizure as required by the C.F.R. and that the only notice they had was the "Notice of Forfeiture" papers sent to Joseph Sclafani at the federal prison.  (Id. at 12).  They assert that they made the required "claim" under the law, by identifying the items on the Appraisal of Seized Assets list sent to them and then by appearing for depositions.  (Id.)  They claim that "after these proceedings, [the DEA] merely forfeited the property," and that claimants "were never again contacted by the DEA, the U.S. Attorney's Office, nor the United States District Court for the Eastern District of New York,

which subsequently entered a Forfeiture ruling on the Docket associated only with Mr. Joseph Sclafani's case. . . ."[14]

Plaintiffs further assert that "virtually none" of the seized jewelry could be associated with Joseph Sclafani's criminal activity, and plaintiffs question the assertion that the jewelry "has now long been disposed of," precluding plaintiffs' request for relief.  (Id. at 4 (citing Govt. Mem. at 10)).  Although plaintiffs appear to acknowledge that if the jewelry has in fact been disposed of, plaintiffs have no right to monetary relief, plaintiffs nonetheless seek equitable relief in the form of disclosure of what the government did with the property.  (Id.)

On January 11, 2018, this Court, recognizing that the _pro se_ plaintiffs were seeking to set aside the forfeiture under 18 U.S.C. § 983(e), found that plaintiffs were challenging the forfeiture based on a failure to receive notice.  (1/11/18 Order at 1).[15]  The Court also construed the motion as a complaint in equity and directed the Clerk of Court to serve the United States Attorney for the Eastern District of New York.  The Court subsequently granted the government's motion for an extension of time to respond to the plaintiffs' pleading until April 11, 2018, and on that date, the government filed the instant motion to dismiss, including with the Notice of Motion the "Notice to _Pro Se_ Litigant Opposing Motion to Dismiss," required by Local Civil Rule 12.1, indicating that because the government was relying on additional written materials outside the initial pleadings, the court may treat the motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

On July 29, 2018 plaintiffs' retained counsel, Christopher A. Errante, Esq., filed a Motion for Leave to Appear _Pro Hac Vice_, and that same day filed plaintiffs' Brief and

---

[14] It should be noted that the order plaintiffs reference relates not to the seized jewelry but to the forfeiture ordered as a result of Sclafani's guilty plea.

[15] Citations to "1/11/18 Order" refer to the Order of this Court, dated January 11, 2018, ECF No. 3.

Declarations in Support of [Plaintiffs'] Motion.  The district court subsequently referred the government's motion to the undersigned to prepare a Report and Recommendation.

DISCUSSION

I.    The Government's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

The government moves to dismiss plaintiffs' action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the court lacks subject matter jurisdiction.

A.    Standards for a 12(b)(1) Motion

Rule 12(b)(1) provides that a court may dismiss a case for lack of jurisdiction, and motions to dismiss for lack of jurisdiction must be considered first before the court may consider the validity of a claim.  Fed. R. Civ. P. 12(b)(1).  See France v. Touro Coll., No. 14 CV 4613, 2016 WL 1105400 (E.D.N.Y. Feb. 16, 2016), report and recommendation adopted France v. Touro Coll., No. 14 CV 4613, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999)).  When a party moves to dismiss for lack of subject matter jurisdiction, the party invoking the federal court's jurisdiction has the burden of proving "to a reasonable probability" that the claims fall within the statutory authority of the court.  Scherer v. Equitable Life Assurance Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003); Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994); Pollock v. Trustmark Ins. Co., 367 F. Supp. 2d 293, 296 (E.D.N.Y. 2005).  In considering a motion to dismiss pursuant to Rule 12(b)(1), the court may "refer to evidence outside the pleadings" without converting the proceeding to a motion for summary judgment.  Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000).  Here, the government claims that, due to the Civil Asset Forfeiture Reform Act of 2000, this Court lacks subject matter jurisdiction over this action.

B. The Civil Asset Forfeiture Reform Act

Plaintiffs' motion to set aside the forfeiture of their seized jewelry is governed by the

Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983. CAFRA provides in

relevant part as follows:

> (1) Any person entitled to written notice in any
> nonjudicial civil forfeiture proceeding under a
> civil forfeiture statute who does not receive such
> notice may file a motion to set aside a declaration
> of forfeiture with respect to that person's interest
> in the property, which motion shall be granted if –
>
> (A)  The Government knew, or reasonably should
> have known, of the moving party's interest
> and failed to take reasonable steps to provide
> such party with notice and
>
> (B)  The moving party did not know or have reason
> to know of the seizure within sufficient time to
> file a timely claim.

When CAFRA was enacted, Congress explicitly stated that Section 983 provided the

"exclusive remedy" for seeking to set aside a civil forfeiture.  Id. § 983(5) (providing that "[a]

motion filed under this subsection shall be the exclusive remedy for seeking to set aside a

declaration of forfeiture under a civil forfeiture statute"); see also Conard v. United States, 470

Fed. Appx. 336, 339 (5th Cir. 2012).  Since the enactment of CAFRA, courts have uniformly

held that once seized property has been administratively forfeited, "the district court is divested

of jurisdiction to review the merits of the forfeiture action."  Cohen-Sanchez v. United States ex

rel. Drug Enforcement Admin., No. 11-6578, 2012 WL 1150760, at *3 (D.N.J. Apr. 5, 2012);

see also Diaz v. United States, 517 F.3d 608, 611-12 (2d Cir. 2008) (holding that once civil or

administrative forfeiture proceedings have been commenced, the district court no longer has

subject matter jurisdiction to review the merits of a claim of forfeiture in connection with a

motion for return of property); United States v. Pickett, No. 07 CR 117, 2011 WL 3876974, at *2 (E.D.N.Y. Sept. 1, 2011) (same).

There is, however, limited jurisdiction in the district court to review whether an interested party received proper notice of the administrative proceedings. See United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000); see also United States v. Triplett, 240 Fed. Appx. 736, 737 (8th Cir. 2007); Cohen-Sanchez v. United States ex rel. Drug Enforcement Admin., 2012 WL 1150760, at *3. In Mikhaylov v. United States, this court held that the party moving to set aside a forfeiture must demonstrate two elements: 1) that the government failed to take reasonable steps to provide notice of the seizure; and 2) that the party seeking review did not know or have reason to know of the seizure in sufficient time to file a timely claim. 29 F. Supp. 3d 260, 266 (E.D.N.Y. 2014); see also Bermudez v. City of New York Police Dep't, No. 07 CV 9537, 2008 WL 3397919, at *4 (S.D.N.Y. Aug. 11, 2008).

CAFRA further provides that any motion made under paragraph (1) may "be filed not later than 5 years after the date of final publication of notice of seizure of the property." Id. § 983(e)(3). See Ramirez de Sarrazola v. United States Dep't of Justice, No. 05 CV 337, 2006 WL 1806506, at *3 (E.D.N.Y. June 29, 2006) (holding that "CAFRA establish[es] a five year statute of limitations for challenges to forfeitures").

C.  Analysis

The government argues that under Section 983(e), plaintiffs had five years after the date of final publication of the notice of seizure of property to move to set aside the forfeiture under CAFRA. (Govt. Mem. at 16).  Since the Publication Notice in this case was last published in *The Wall Street Journal* on October 31, 2011 (id. (citing Rashid Decl. ¶ 4(g), Ex. 11)), plaintiffs should have filed their motion to set aside the forfeiture on or before October 31, 2016.  (Id.)

19

However, plaintiffs' motion was not filed until May 16, 2017, more than six months past the five-year statute of limitations period.

Plaintiffs argue that the Court should consider all of the "extraordinary circumstances" that account for the delays in bringing their motion and find that the doctrine of equitable tolling applies in this case. (Pls.' Br. at 7). Citing the Ninth Circuit's decision in Okafor v. United States, 846 F.3d 337, 340-41 (9th Cir. 2017), plaintiffs argue that CAFRA's five-year time limit is not jurisdictional, but merely a claim processing rule, and therefore equitable tolling may apply. (Id. at 8; see also id. at 10 (citing United States v. Vasquez-Alvarez, 760 F.3d 193, 198 (2d Cir. 2014) (holding that Section 983(a)(1)(A) is not a jurisdictional requirement, but rather a claim processing rule); United States v. Wilson, 699 F.3d 789, 795-97 (4th Cir. 2012) (same))).

In seeking equitable tolling, plaintiffs argue that a review of the record demonstrates that there was a history of "the claimants' diligent efforts being met with government indifference if not bad-faith obstruction." (Pls.' Br. at 5). Plaintiffs claim that the government would demand information and then "inexplicably delay their response, requesting more information in a short timeframe." (Id.) They assert that the DEA "caused much of the delay by not responding to the claim and making unreasonable requests for additional information." (Id. at 12).

However, as the government notes, plaintiffs have brought suit against Parlatore and his firm for malpractice as a result of the loss of the jewelry, suggesting that their own counsel failed to adequately represent plaintiffs in their efforts to obtain the seized jewelry. (Govt. Mem. at 2). While plaintiffs contend that "simple attorney negligence" is generally not grounds for equitable tolling, they acknowledge that they relied to their detriment on counsel's delay. (Pls.' Br. at 12).

Finally, plaintiffs urge the Court to consider as "extraordinary circumstances" the illness and death of Augustus Sclafani, and the "family turmoil encountered by Ramona Rizzo." (Id. at

13). According to the Declaration of Eugenia Sclafani, her husband was diagnosed with colon cancer in 2009, undergoing surgery and radiation therapy, during which time she was his primary caregiver. (Sclafani Decl. ¶ 8). In 2011, the cancer returned in Mr. Sclafani's liver and again he was treated with chemotherapy. (Id. ¶ 9). Ms. Sclafani states that he was bedridden at the end of his life and that she was the primary caregiver until his death on November 19, 2013. (Id. ¶ 10). She claims that in addition to losing her husband of 49 years and being on her own for the first time in her life, her son was incarcerated, and her daughter also had serious health issues. (Id. ¶¶ 11, 12). She blames the government for delays and claims that she may have "inadvertently missed certain filing dates for the jewelry seized from [her] home." (Id. ¶ 14).

Ramona Rizzo claims in her Declaration that the death of Augustus Sclafani "had a profound effect on [her] life" as well. (Rizzo Decl. ¶ 14). Not only had she lost her future husband due to his incarceration, but the death of Augustus left "a huge hole in the fabric of [her] life," leaving her to worry about her future and the future of her four children. (Id. ¶¶ 14, 15). She claims that she diligently read all the papers and tried to provide what the government requested, but the delays between submissions and the requests to produce additional information within short deadlines made it "next to impossible to produce documentation in such a small window of time." (Id. ¶ 17). She too blames the government for the missed deadlines. (Id. ¶ 18).

1.  Equitable Tolling

The Second Circuit has made it clear that equitable tolling is only appropriate in "rare and exceptional circumstances." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 78 (2d Cir. 2003). In order to qualify for equitable tolling, plaintiffs bear the burden of demonstrating that "(1) that [they have] been pursuing [their] rights diligently; and (2) that some

extraordinary circumstance stood in their way." Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir. 2008); see also Okafor v. United States, 846 F.3d at 340 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). If the plaintiffs can demonstrate these two elements "throughout the period to be tolled," then "the statute of limitations is suspended for the duration of the extraordinary circumstances supporting tolling." Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011).

The government argues that plaintiffs have failed to demonstrate the elements necessary to satisfy the requirements for equitable tolling. (Govt. Reply[16] at 4). To the extent that plaintiffs argue that they brought their motion promptly and that the delays at issue were attributable to the DEA,[17] the government disputes that argument, citing to the factual record. (Id.) Plaintiffs do not dispute that the last letter sent to plaintiffs, denying their request for reconsideration of their petition, was dated July 14, 2015. (Rashid Decl., Ex. 28). Following that time, plaintiffs waited almost two years to move, filing their motion in May 2017, nearly six months after the statute of limitations expired on October 31, 2016.

Plaintiffs cite the decision in Munchinski v. Wilson, 694 F.3d 308 (3d Cir. 2012), to argue that the DEA's constant requests for more information, followed by delay, misled plaintiffs into believing that they had acted diligently, and that it was this conduct by the government that had caused the delay. However, Munchinski is distinguishable from the instant case in that there, the state court had erroneously dismissed a defendant's post-conviction habeas petition due to a parallel appeal from an earlier petition, leading the defendant to believe that he

---

[16] Citations to "Govt. Reply" refer to the government's Reply Memorandum in Support of the United States of America's and the Drug Enforcement Administration's Motion to Dismiss, dated October 26, 2018, ECF No. 26.

[17] Plaintiffs cite as an example of the DEA's failure to move promptly and with diligence the fact that even though the motion was filed on May 26, 2017, it took the government until April 2018 to respond to the motion. However, as the government notes, much of the delay was occasioned by plaintiffs' failure to properly serve their motion on the government in accordance with the Federal Rules of Civil Procedure. Indeed, when this Court determined that service had not been effected, an Order was entered on January 11, 2018, directing the Clerk of Court to serve the United States Attorney's Office with a copy of plaintiffs' motion. (1/11/18 Order). Thus, contrary to plaintiffs' claim in this regard, the delay was not attributable to the government.

22

could reassert his claims after the appeal was decided. Id. By contrast, plaintiffs here have provided nothing to suggest that following the issuance of the July 14, 2015 letter, the government took any steps to mislead plaintiffs as to their rights or the timing of their motion. Indeed, plaintiffs had counsel at the time and even accepting that there were delays between the time plaintiffs provided information and the DEA responded, those delays could not be responsible for the two-year lapse of time between the final forfeiture notice and plaintiffs' filing of the instant motion.

Although the plaintiffs argue that the death of Augustus Sclafani and the incarceration of Joseph Sclafani constitute "extraordinary circumstances," both events occurred long before the government's final determination on the petition for remission or mitigation of forfeiture and years before the expiration of the statute of limitations in October 2016, with Joseph Sclafani's conviction occuring in 2011 and Augustus Sclafani's death in 2013. While the Court accepts plaintiffs' statement that the illness and death of Augustus Sclafani was a life changing event for both Ms. Sclafani and Ms. Rizzo, they had retained counsel at the time with respect to the seized jewelry, and it does not explain the delay of more than two years following the DEA's final notification. Although plaintiffs cite a number of cases in which medical or mental conditions justify equitable tolling (Pls.' Br. at 13 (citing cases)), the cases all deal with conditions suffered by the claimants themselves, not by a family member. See, e.g., Bolarinwa v. Williams, 593 F.3d 226, 232 (2d Cir. 2010) (remanding the case to have the district court determine whether the defendant's own mental illness resulted in a delay in filing habeas petition); Ata v. Scutt, 662 F.3d 736, 744 (6th Cir. 2011) (remanding case to determine if defendant's mental incompetence prevented him from filing a habeas petition); Chapman v. Choicecare Long Island Term

Disability Plan, 288 F.3d 506, 514 (2d Cir. 2002) (remanding for determination if plaintiff's mental illness prevented the timely request for review of denial of long term disability benefits).

To the extent that plaintiffs claim that their own attorney's negligence caused the delays (Pls.' Br. at 12 (citing Holland v. Florida, 560 U.S. 631 (2010))), the government correctly distinguishes the circumstances of that case. (See Govt. Reply at 6). In Holland, the defendant sent numerous letters to his attorney seeking to have him file a federal habeas corpus petition, which the attorney failed to do. 560 U.S. at 652. The Supreme Court remanded the case to have the Court of Appeals determine if equitable tolling should apply. Id. at 644. Here, plaintiffs have made no showing in response to the government's motion as to what steps, if any, they took directing Parlatore to file a motion to set aside the forfeiture or even that Parlatore failed to communicate with them. While the Court accepts as true for purposes of this motion that Parlatore was negligent in some fashion, as alleged in plaintiffs' malpractice suit, plaintiffs have not shown that the attorney's negligence rises to the level of "extraordinary circumstances" that would warrant equitable tolling. See Lawrence v. Florida, 549 U.S. 327, 336 (2007) (remarking that an attorney's miscalculation "would essentially toll limitations periods for every person whose attorney missed a deadline").

Having reviewed the submissions provided by both parties, the Court finds no basis to recommend that equitable tolling be applied here to extend the statute of limitations. While it is clear that plaintiffs acted promptly to contest the seizure of their jewelry and to request its return, the documents demonstrate that when plaintiffs failed to meet certain deadlines, the DEA, in its discretion, granted them more time and gave them every opportunity to provide the information that the government needed to verify the source of the income used to purchase the jewelry. Thus, even though both the Sclafanis' and Rizzo's original challenges were defective or

untimely, they were given additional time to file their administrative petition. (Rashid Decl., Exs. 14, 15, 15a). When Parlatore submitted his letter on January 30, 2012, which again was beyond the time period to file a claim, the DEA construed the letter as a petition for remission or mitigation and gave him an additional 30 days to cure the identified deficiencies. (Id., Exs. 19, 22, 23). Following the DEA's June 20, 2012 interview of the plaintiffs and plaintiffs' failure to provide the DEA with the requisite documentary proof, plaintiffs were informed that they could request reconsideration; the DEA then again gave them an additional opportunity to provide the necessary proof, including conducting a second interview in February 2013. (Id., Exs. 25, 26, 27; O'Toole Decl. ¶ 6). Although plaintiffs complain about the delays between their submissions and the DEA's response to those submissions, there is no question that the DEA needed time to investigate plaintiffs' assertions and that during the periods of delay plaintiffs never took the opportunity to obtain tax returns, proof of legitimate income, or even affidavits from the people they now claim are willing to testify about the jewelry's origins. Plaintiffs have not suggested that they submitted additional information to the DEA during the period following the July 14, 2015 letter or that they made any effort to obtain the information consistently requested in all of the letters sent to Parlatore during that time. More importantly, they had almost two years to file the instant motion following the final Notice and they let that time pass without any efforts or attempts to gain more time.

Thus, the Court respectfully recommends that equitable tolling is not appropriate under these circumstances and the government's motion to dismiss the plaintiffs' motion should be granted.

2.  <u>Failure to Demonstrate Lack of Notice</u>

Even if the five-year statute of limitations were tolled in this matter, the government's motion to dismiss should be granted for other reasons.

In order to set aside a declaration of forfeiture under Section 983(e), CAFRA requires a showing that the government did not take reasonable steps to provide notice and that the claimants had no knowledge or reason to know of the seizure with sufficient time to file a claim. 18 U.S.C. § 983(e)(1).  Plaintiffs' initial motion alleges that they were not given proper notice of the seizure of the jewelry, claiming that they only discovered it through the Notice sent to Joseph Sclafani at the MDC.  (Mot. at 12).  While their papers in opposition to the government's motion to dismiss again raise the argument, the plaintiffs' declarations are silent as to this issue and they have not presented any evidence to dispute the government's documentation showing that Notice was actually sent to each of the plaintiffs in the form of certified mail, addressed to their residences at the time.  (<u>See</u> Rashid Decl., Exs. 14, 16, 18).  Since CAFRA's notice requirement "mirrors the due process requirement that notice be 'reasonably calculated . . .to apprise a party of the pendency of the action,'" <u>Clark v. Suffolk County</u>, 14 CV 7195, 2017 WL 1067800, *7 (E.D.N.Y. Feb. 24, 2017), and "[a] written notice sent, via certified mail, to any known address, combined with published notices ordinarily satisfies the <u>Mullane</u> standard," <u>id.</u> (citing <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950)), the government took reasonable steps in this case.  Not only did the government mail Notices to Augustus, Eugenia, and Ramona Rizzo, and publish the Notice on three separate occasions, but when Ms. Rizzo's letter was returned by the Post Office, the DEA sent a second letter which was not returned.  (Rashid Decl., Exs. 5, 6, 9, 10, 11, 12).  Eugenia Sclafani admitted that she had seen the letter sent to Joseph Sclafani, thereby confirming that she had actual notice.  (Mot. at 12).  Moreover, it is clear from

26

the events that transpired in the action that the plaintiffs all had received actual notice because they hired counsel and proceeded to contest the forfeiture for a period of at least two years.

Thus, because they cannot demonstrate that they did not receive proper notice or had no reason to know of the seizure, plaintiffs cannot satisfy the first element required to pursue a motion under Section 983. Accordingly, it is respectfully recommended that the government's motion to dismiss be granted.

### 3. Plaintiffs' Request for Equitable Relief

Plaintiffs seek equitable relief from this Court in the form of a declaration that the CAFRA forfeiture was invalid, the jewelry belongs to the plaintiffs, not the government and, if as DEA submits, the jewelry has been disposed of, an order requiring the government to identify how and where the jewelry was disposed of so that plaintiffs can bring a replevin or conversion action. (Pls.' Br. at 15).

As an initial matter, plaintiffs, in their Brief opposing the government's motion, contend that as to the government's claim that the jewelry was disposed of, there "is no declaration supporting this assertion; as far as anyone knows, the jewelry remains in the government's possession." (Id.) In connection with its Reply Memorandum, the government presented the October 24, 2018 Declaration of Michael D. Cooke ("Cooke Decl."), District Asset Forfeiture Coordinator for the Eastern District of New York, United States Marshals Service ("USMS"), since September 2011. (Cooke Decl. ¶ 1). According to his Declaration, Cooke manages all asset forfeitures for the USMS, including the sale and disposal of forfeited assets. (Id.) Attached to his Declaration is a listing of the various items seized from the plaintiffs, the date they were disposed of and the manner in which they were disposed. According to Cooke, the vast majority of the items were sold at auction on October 15, 2015, with six items being

auctioned off on November 12, 2015, and a man's ring sold at auction on February 2, 2016. (Id. ¶¶ 4, 6). The final item, a "Ballon Blue unauthentic Cartier," was destroyed on December 10, 2015. (Id. ¶ 5).

Recognizing that the doctrine of sovereign immunity bars the court from awarding money damages against the United States when seized property is unavailable for return, see Adeleke v. United States, 355 F.3d 144, 149-51 (2d Cir. 2004), plaintiffs do not even request monetary relief. (Pls.' Br. at 15). However, what they are requesting is a declaration of rightful ownership of the jewelry in the plaintiffs and a listing of the purchasers of the jewelry so that they may pursue remedies in state court. (Id. at 15-16).

The government contends that the district court lacks jurisdiction to grant such equitable relief, arguing that CAFRA provides the only "'exclusive remedy for seeking to set aside a declaration of forfeiture.'" (Govt. Reply at 8 (quoting 18 U.S.C. § 983(e)(5))). The government distinguishes plaintiffs' reliance on Langbord v. United States Department of Treasury, 832 F.3d 170 (3d Cir. 2016), noting that in Langbord, it was the government that sought a declaratory judgment seeking to quiet title to coins stolen from the U.S. Mint, whereas here, the plaintiffs seek to set aside a forfeiture which, if allowed, would permit an "end run" around the requirements of Section 983(e). (Govt. Reply at 9).

Moreover, as the government notes, plaintiffs have failed to cite any authority that would authorize the Court to order the DEA to disclose the identity of the purchasers of the seized items. (Id.) In the absence of a waiver of sovereign immunity that would allow the United

States to be sued for injunctive relief, the Court respectfully recommends that plaintiffs' request ordering the government to produce the requested information be denied.[18]

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that the government's motion to dismiss be granted in its entirety on the grounds that plaintiffs have failed to satisfy the requirements for a Section 983 motion to set aside the administrative forfeiture, and that plaintiffs' motion in equity seeking the return of property is barred by Section 983's exclusive remedy.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

---

[18] Even if the government were required to provide the names and locations of the purchasers of the auctioned items, the Court is without jurisdiction to declare that plaintiffs are the rightful owners of the property. As discussed supra, the plaintiffs' only remedy is an action under Section 983, which plaintiffs cannot successfully pursue as set forth above. Accordingly, in the absence of a declaration such as the one sought by plaintiffs, identifying them as the rightful owners and not the government, it is hard to see how any action for replevin or conversion brought in state court against the purchasers in due course could succeed either.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       February 20, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York