UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

RAMONA RIZZO, EUGENIA SCLAFANI, and
STACEY SCLAFANI,

                    Plaintiffs,

       v.

THE UNITED STATES OF AMERICA and DRUG
ENFORCEMENT ADMINISTRATION,

                  Defendants.

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
17-MC-1415 (MKB) (CLP)

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Plaintiffs Ramona Rizzo, Eugenia Sclafani, and Stacey Sclafani, proceeding *pro se*,[1]

commenced the above-captioned action on May 16, 2017,[2] against the United States of America

and the United States Drug Enforcement Administration ("DEA"), by filing a motion to set aside

the administrative forfeiture of various items of jewelry seized by the DEA in 2011 ("Plaintiffs'

Motion").[3]  (Pls.' Mot. to Set Aside Forfeiture ("Pls.' Mot."), Docket Entry No. 1.)  Plaintiffs

allege that the DEA wrongfully seized and forfeited Plaintiffs' property in connection with

---

[1]  Plaintiffs subsequently retained counsel.

[2]  Plaintiffs initiated this action by filing a "Motion to Set Aside Forfeiture Under 18 U.S.C. § 983, *et seq*."  (*See* Docket Entry No. 1.)  Magistrate Judge Cheryl L. Pollak construed Plaintiffs' pleading as a "civil complaint in equity and under 18 U.S.C. § 983 seeking return of their property."  (*See* Order dated Jan. 11, 2018, Docket Entry No. 3.)

[3]  Plaintiffs' Motion also lists as Plaintiffs Annissa Khatib, Melina Khatib, and Gianna Khatib, who are described as "Ramona's Children," and Augustus Sclafani, who is listed "posthumously."  (Pls.' Mot. to Set Aside Forfeiture ("Pls.' Mot."), Docket Entry No. 1.)  None of these individuals signed the initial filing and are therefore not parties to this action.  *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented."); *see also Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) ("Although plaintiffs have a right to proceed *pro se* in civil actions . . . , a *pro se* plaintiff may not seek to represent the interests of third-parties." (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998))).

criminal proceedings against Joseph Sclafani, a relative of Eugenia and Stacey and then-fiancé of Ramona. (*Id.* at 3–5.) Plaintiffs claim they are the rightful owners of most of the seized items, and that the DEA did not give proper notice before administratively forfeiting their property. (*Id.* at 5–11.)

Defendants moved to dismiss Plaintiffs' action on April 11, 2018, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim, respectively. (Defs.' Notice of Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 11; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 11-2.) On April 12, 2018, The Court referred Defendants' motion to dismiss to Magistrate Judge Cheryl L. Pollak for a report and recommendation. (Order dated Apr. 12, 2018.) By report and recommendation filed on February 21, 2019, Judge Pollak recommended that the Court grant Defendants' motion to dismiss. (Report and Recommendation ("R&R") 1, Docket Entry No. 27.) Plaintiffs filed objections to the R&R on March 7, 2019. (Pls.' Objs., Docket Entry No. 28.) Defendants filed responses to Plaintiffs' objections on March 21, 2019. (Defs.' Resp. to Pls.' Objs. ("Defs.' Resp."), Docket Entry No. 29.)

For the reasons set forth below, the Court converts Defendants' motion to dismiss into a motion for summary judgment and grants the motion for summary judgment.

## I. Background

### a. Factual background

#### i. Arrests and search warrants

On or about August 10, 2011, DEA agents arrested Joseph Sclafani and others for drug-

related offenses in violation of Title 21 of the United States Code sections 841 and 846.[4]  (*See* Pls.' Mot. 3); *see also United States v. Kupa*, 11-MJ-816, Docket Entry No. 4 (E.D.N.Y. Sept. 9, 2011) (arrest warrant issued for Joseph Sclafani).  At the same time, DEA officers also executed a federal search warrant (the "Search Warrant") at Joseph Sclafani's residence, located at 71 Wheeling Avenue, Staten Island, New York (the "71 Wheeling Avenue Residence").[5]  Pursuant to the Search Warrant, law enforcement agents seized fifty items of jewelry (the "Seized Jewelry"), at an approximate value of $184,000.[6]  (Pls.' Mot. Ex. 1).  At the time of the search, Joseph Sclafani's then-fiancé, Ramona, was in the process of moving into the 71 Wheeling Avenue Residence and had stored certain personal items in the house.  (*Id.* at 9–10.)

### ii.   Grand jury proceedings

On September 7, 2011, a grand jury in the Eastern District of New York charged Joseph Sclafani and others with conspiracy to distribute cocaine, distribution of cocaine, conspiracy to distribute marijuana, and distribution of marijuana, in violation of various provisions of Title 21 of the United States Code.  *See United States v. Levine*, No. 11-CR-0345, Docket Entry No. 1 (E.D.N.Y. Sept. 7, 2011) (S-1 Superseding Indictment).  The grand jury subsequently returned a second and then a third superseding indictment against Joseph Sclafani and certain of his

---

[4]  The Court assumes the truth of the factual allegations in Plaintiffs' Motion for the purposes of this Memorandum and Order.

[5]  (*See* Pls.' Mot. 3); *see also United States v. 71 Wheeling Avenue, Staten Island*, No. 11-MJ-820, Docket Entry No. 2 (E.D.N.Y. Aug. 10, 2011).

[6]  The 71 Wheeling Avenue Residence was a duplex house, where Joseph Sclafani resided on the first floor, and his parents, Augustus Sclafani and Eugenia Sclafani, resided on the second floor.  (Pls.' Mot. 7.)  Law enforcement agents only searched the first floor of the residence pursuant to the Search Warrant.  (*Id.* at 3.)

codefendants on February 8, 2012, and March 21, 2012, respectively.[7]  *See id.* at Docket Entry

No. 36 (S-2 Superseding Indictment); *id.* at Docket Entry No. 53 (S-3 Superseding Indictment).

### iii.   Forfeiture notification

On October 5, 2011, the DEA mailed a notice of the seizure to Joseph Sclafani at the

Metropolitan Detention Center (the "MDC") in Brooklyn, New York, pursuant to 18 U.S.C.

§ 983.  (Pls.' Mot. Ex. 2.)  The notice of seizure described the Seized Jewelry and informed

Joseph Sclafani that "procedures to administratively forfeit [the] property [were] underway."

(*Id.*)  In the notice the DEA advised Joseph Sclafani of his right to "petition the DEA for return

of the property or [his] interest in the property" within thirty days of his receipt of the notice, and

his right to "contest the forfeiture of the seized property" in a United States District Court by

filing a claim "with the Forfeiture Counsel of the DEA by November 9, 2011."  (*Id.*)  Eugenia

Sclafani received copies of the notice of forfeiture sent to Joseph Sclafani.  (Pls.' Mot. 11–12.)

### b.   Procedural background

Plaintiffs commenced this action on May 16, 2017, by filing a Motion to Set Aside

Forfeiture Under 18 U.S.C. § 983(e), *et seq.*  Judge Pollak construed Plaintiffs' pleading as a

civil complaint in equity and under 18 U.S.C. § 983 seeking return of their property.  (Order

dated January 11, 2018, Docket Entry No. 3.)

---

[7]  On April 11, 2013, Joseph Sclafani pleaded guilty to the lesser-included offense of count one of the third superseding indictment, which charged Sclafani with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.  *See United States v. Levine*, No. 11-CR-0345, Docket Entry No. 178 (E.D.N.Y. Apr. 11, 2013).  On August 16, 2013, the court sentenced Joseph Sclafani to 180 months of incarceration followed by three years of supervised release. *See id.* at Docket Entry No. 250.  In connection with the sentencing proceeding, the court entered an Order of Forfeiture, which directed the entry of a forfeiture money judgment in the amount of $500,000.  *See id.* at Docket Entry No. 235.  The Order of Forfeiture was not directed at any of the Seized Jewelry.  *See id.*

On April 11, 2018, Defendants moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Defs.' Mem.)  Defendants argued that: (1) Plaintiffs' claims were barred by the five-year statute of limitations under 18 U.S.C. § 983; (2) Plaintiffs failed to make required showings under 18 U.S.C. § 983(e), *i.e.*, that the government did not take reasonable steps to provide them with notice of the Seized Jewelry; and (3) Plaintiffs were not entitled to equitable relief because 18 U.S.C. § 983(e) provides the exclusive remedy to set aside an administrative forfeiture.  (*Id.*)  The Court referred Defendants' motion to Judge Pollak on April 12, 2018.  (Order dated April 12, 2018.)  On July 29, 2018, Plaintiffs, through counsel, opposed Defendants' motion to dismiss, (Pls.' Opp'n.), and Defendants responded to Plaintiffs' opposition on October 26, 2018, (Defs.' Reply).

On February 21, 2019, Judge Pollak issued a report and recommendation recommending that the Court grant Defendants' motion to dismiss.  (R&R.)  Plaintiffs filed objections to the R&R on March 7, 2019, (Pls.' Objs.), and Defendants responded to Plaintiffs' objections on March 21, 2019,[8] (Defs.' Resp.).

### c.   The R&R

Judge Pollak recommended granting Defendants' motion on three grounds: (1) Plaintiffs' claims are barred by the statute of limitations and equitable tolling does not apply; (2) even if Plaintiffs' claims were timely, Plaintiffs have failed to demonstrate a lack of notice required under 18 U.S.C. § 983(e); and (3) the Court lacks jurisdiction to grant Plaintiffs equitable relief. (R&R 21–29.)

---

[8]  The Court apologizes to the parties for the oversight and any resulting inconvenience caused by the delay in reviewing Judge Pollak's report and recommendation.

###### i.   Statute of limitations and equitable tolling

In the R&R, Judge Pollak determined that Plaintiffs' claims are barred by the five-year statute of limitations set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), because Plaintiffs' Motion "was not filed until May 16, 2017, more than six months past the five-year statute of limitations period."  (R&R 19–20.)  Judge Pollak also determined that the statute of limitations was not tolled by Plaintiffs' three alleged "exceptional circumstances": (1) delays caused by the DEA; (2) family turmoil caused by the death of Augustus Sclafani and the incarceration of Joseph Sclafani; or (3) delays caused by their former attorney's negligence.  (*See id.* at 20; Pls.' Opp'n 12–13.)

###### ii.   Lack of notice under 18 U.S.C. § 983(e)

Judge Pollak concluded that Defendants' efforts to provide notice — including "mail[ing] Notices to Augustus, Eugenia, and Rizzo" and "publish[ing] the Notice on three separate occasions" — satisfied CAFRA's notice requirement.  (R&R 26.)  Judge Pollak also determined that "[P]laintiffs all had received actual notice because they hired counsel and proceeded to contest the forfeiture for a period of at least two years."  (*Id.* at 27.)  Thus, Plaintiffs did not "demonstrate that they did not receive proper notice or had no reason to know of the seizure."  (*Id.*)

###### iii.   Plaintiff's request for equitable relief

Judge Pollak recommended denying Plaintiffs' request to the extent Plaintiffs seek equitable relief in the form of an order requiring that Defendants identify how and where the Government disposed of the Seized Jewelry.  (R&R 28.)  Judge Pollak found that Plaintiffs "ha[d] failed to cite any authority that would authorize the Court to order the DEA to disclose the identity of the purchasers of the seized items."  (*Id.* at 28.)  "In the absence of a waiver of

6

sovereign immunity that would allow the United States to be sued for injunctive relief," Judge Pollak recommended that the Court deny Plaintiffs' request for an order directing the government to produce the requested information.  (*Id.* at 28–29.)

>    **d.   Plaintiffs' objections to the R&R**

Plaintiffs object to Judge Pollak's finding that equitable tolling does not apply, and argue that Judge Pollak erred by concluding that: (1) Plaintiffs' delays were not caused by Defendants, (Pls.' Objs. 2); (2) the death of Augustus Sclafani and incarceration of Joseph Sclafani did not constitute extraordinary circumstances, (*id.*); and (3) Plaintiffs' former counsel's alleged negligence did not constitute an extraordinary circumstance, (*id.* at 2–3).  Plaintiffs also object to Judge Pollak's recommendation that the Court deny their requests for the identities of the purchasers of the Seized Jewelry.  (*Id.* at 3.)

>    **e.   Defendants' responses to Plaintiffs' objections**

Defendants note that Plaintiffs "do not dispute [Judge Pollak's] finding that their motion was filed more than six months past the expiration of the five-year statute of limitations period," and argue that Judge Pollak correctly concluded that equitable tolling does not apply because: (1) any administrative delays by the DEA "could not have caused" Plaintiffs' delay in commencing this action, (Defs.' Resp. 18–19); (2) the death of Augustus Sclafani and incarceration of Joseph Sclafani were not extraordinary circumstances because neither event "could explain [Plaintiffs'] filing delay of more than two years," (*id.* at 21); and (3) the negligence of Plaintiffs' former attorney did not justify equitable tolling because they "made no showing as to what steps, if any, they took in directing their former attorney . . . to file a motion seeking to set aside the forfeiture," (*id.* at 21–22).  Defendants also argue Plaintiffs are not entitled relief beyond what CAFRA provides.  (*Id.* at 22–23.)

## II.   Discussion

### a.   Standards of review

#### i.   R&R

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, No. 15-CR-992, 2022 WL 402394, at *3 (2d Cir. Feb. 10, 2022) (citing *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See S.J. v. N.Y.C. Dep't of Educ.*, No. 21-CV-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (noting that the district court applied correct legal standard in conducting *de novo* review of portions of the magistrate judge's report to which specific objections were made and reviewing portions not objected to for clear error).  The clear error standard also applies when a "party makes only conclusory or general objections, or simply reiterates his original arguments." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)); *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations.").  Where, however, a party "t[akes] issue with a specific legal

conclusion in the report and recommendation," a district court reviews the objected-to portions of the report and recommendation *de novo*. *Miller*, 43 F.4th at 120–21 (concluding that the plaintiff's objection, although revisiting an issue already argued, should have been reviewed *de novo* where the plaintiff objected to a "specific legal conclusion in the report and recommendation," and noting that clear error is normally applied "when the objections are nonspecific or 'merely perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition'" (quoting *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (alteration in original))).

      **ii.    Rule 12(b)(1)**

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015)); *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a

preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Branch of Citibank, N.A. v. De Nevares*, 74 F.4th 8, 15 (2d Cir. 2023) (quoting *Doe v. Trump Corp.*, 6 F.4th 400, 415 (2d Cir. 2021) (same); *Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at \*3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *F.D.I.C. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### iii. Rule 56

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The

court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

> **b. CAFRA limits the scope of the Court's review**

Defendants argue that Plaintiffs' claims are governed by CAFRA, which provides that "a motion filed under Section 983(e) is the exclusive remedy for setting aside a declaration of forfeiture under a civil forfeiture statute." (Defs.' Mem. 15 (first citing 18 U.S.C. § 983(e)(5); and then citing *Diaz v. United States*, 517 F.3d 608, 611–12 (2d Cir. 2008)).) Defendants also argue that, under CAFRA, "the commencement of civil or administrative forfeiture proceeding[s] deprives [the] district court of subject matter jurisdiction to review [the] merits of [a] forfeiture." (*Id.* (citing *Diaz*, 517 F.3d at 611–12).)

Plaintiffs argue that Defendants "misread[] . . . *Diaz*" and contend that because section 983(e) is a claim-processing rule and not a jurisdictional requirement, the doctrine of equitable tolling applies and can excuse a failure to comply with the statute of limitations. (Pls.' Opp'n 9–10.)

On April 25, 2000, Congress passed CAFRA, which permits claims against the United States for injury or loss of goods or property while in law enforcement custody. 18 U.S.C. § 983(e); *Espinoza v. Zenk*, No. 10-CV-427, 2013 WL 1232208, at *5 n.7 (E.D.N.Y. Mar. 27, 2013). CAFRA provides in relevant part, that "[a]ny person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's

interest in the property." *Lucas v. United States*, 775 F.3d, 544, 547 (2d Cir. 2015) (quoting 18 U.S.C. 983(e)(1)); *see also United States v. Brome*, 942 F.3d 550, 552 (2d Cir. 2019) (per curiam) ("The right to seek to set aside the forfeiture is limited to claims of lack of adequate notice." (citing *Lucas*, 775 F.3d at 547)); *Clark ex rel. New York v. Suffolk County*, No. 14-CV-7195, 2017 WL 1067800, at *5 (E.D.N.Y. Feb. 24, 2017) (observing that "the waiver of sovereign immunity [under CAFRA] applies only to claimants who are entitled to, but do not receive, written notice of a seizure and potential forfeiture as required by the governing statutes and regulations"), *report and recommendation adopted*, 2017 WL 1078566 (E.D.N.Y. Mar. 20, 2017). "[W]here a court sets aside a declaration of forfeiture due to inadequate notice to a party with an interest in the forfeiture, the declaration is set aside, '[n]otwithstanding the expiration of any applicable statute of limitations . . . without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party,' . . . ." *Alli-Balogun v. United States*, 281 F.3d 362, 369 n.6 (2d Cir. 2002) (second alteration in original) (quoting 18 U.S.C. § 983(e)(2)(A)).

CAFRA further provides that a motion under section 983(e) "may be filed not later than [five] years after the date of final publication of notice of seizure of the property." *Lucas*, 775 F.3d at 547 (quoting 18 U.S.C. § 983(e)(3)); *see also Cobar v. Drug Enf't Admin. Asset Forfeiture Section*, No. 12-CV-7415, 2014 WL 1303110, at *4 (S.D.N.Y. Mar. 31, 2014) ("[CAFRA] provides that a motion to set aside a declaration of administrative forfeiture may be filed not later than [five] years after the date of final publication of notice of seizure of the property." (first alteration in original) (internal quotation marks omitted)), *aff'd sub nom. Cobar v. Drug Enf't Admin.*, 600 F. App'x 31 (2d Cir. 2015); *Ramirez de Sarrazola v. U.S. Dep't of Just.*, No. 05-CV-337, 2006 WL 1806506, at *3 (E.D.N.Y. June 29, 2006) ("CAFRA established

a five year statute of limitations for challenges to forfeitures.").

CAFRA's limit to the scope of a court's review does not automatically limit the Court's jurisdiction. The Supreme Court has "encouraged federal courts and litigants to 'facilitat[e]' clarity" on the distinction between jurisdictional prescriptions and claim-processing rules "by using the term 'jurisdictional' only when it is apposite." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (alteration in original) (first citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); and then quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). Accordingly, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 161–62 (quoting *Arbaugh*, 546 U.S. at 515–16); *see also SM Kids, LLC v. Google LLC*, 963 F.3d 206, 213 (2d Cir. 2020) ("A statutory requirement should be treated as jurisdictional . . . only when Congress 'clearly states' as much and 'duly instruct[s]' courts and litigants that the issue is jurisdictional." (alteration in original) (quoting *Arbaugh*, 546 U.S. at 515)).

"[W]hether 18 U.S.C. § 983(e) is a jurisdiction-stripping statute or a claim-processing rule" is "an issue that has divided appellate courts." *Curry v. United States*, No. 22-2594, 2023 WL 6890082, at *2 n.1 (3d Cir. Oct. 19, 2023); *see also Troconis-Escovar v. United States*, 59 F.4th 273, 277 (7th Cir. 2023) ("Courts disagree about the proper characterization of the CAFRA process: does it strip courts of jurisdiction to hear challenges that fall outside of section 983(e)'s ambit, or does it establish a mandatory claims processing rule?"). In determining whether the government's late filing of a civil forfeiture action under section 983(a)(1)(A)(ii) would deprive a district court of subject matter jurisdiction, the Second Circuit has held that "'[t]he provisions of § 983 are procedural rules for pursuing the forfeiture of seized assets,' not 'conditions of

13

subject matter jurisdiction.'"[9] *United States v. Vazquez-Alvarez*, 760 F.3d 193, 198 (2d Cir. 2014) (quoting *United States v. Wilson*, 699 F.3d 789, 795 (4th Cir. 2012)).[10]

---

[9]  The Second Circuit quoted *United States v. Wilson*, 699 F.3d 789 (4th Cir. 2012), where the Fourth Circuit considered "whether Congress, in imposing a 90-day deadline on the government for filing civil forfeiture actions, created a condition of the district court's subject matter jurisdiction." *Id.* at 793.  The Fourth Circuit examined section 983's "statutory context" and concluded that "the provisions of § 983 are procedural rules for pursuing the forfeiture of seized assets." *Id.* at 795.  However, the Fourth Circuit also noted that "procedural rules can be made conditions of subject matter jurisdiction if Congress clearly so indicates," and ultimately concluded that Congress had not clearly indicated that section 983(a)(3) is a condition of jurisdiction. *Id.*

Like the Fourth Circuit, other circuits, including the Ninth Circuit, have concluded that section 983(e) is a non-jurisdictional claim-processing rule.  *See Okafor v. United States*, 846 F.3d 337, 340 (9th Cir. 2017) (reviewing CAFRA's text and legislative history and concluding that "[s]ection 983(e) does not state that it is jurisdictional, nor is there any evidence in CAFRA's legislative history or otherwise on the record that it should be treated as such").  In addition, while the Seventh Circuit declined to decide the question, it expressed "doubt[]" as to whether its characterization of section 983(e) as jurisdictional "comports with the Supreme Court's decisions emphasizing the distinction between statutes that limit subject-matter jurisdiction and statutes that create claims-processing rules." *Troconis-Escovar*, 59 F.4th at 278; *see also Wilson v. United States*, 75 F.4th 775, 777 (7th Cir. 2023) ("Lack of jurisdiction may or may not have been the appropriate grounds for dismissal [of plaintiff's challenge to administrative forfeiture]; the question is not settled.").

In contrast, the Eleventh Circuit has held that section 983 is jurisdictional, although courts "may also invoke their equitable jurisdiction to consider claims brought under CAFRA in 'exceptional cases where equity demands intervention.'" *United States v. Bynum*, 775 F. App'x 626, 629 (11th Cir. 2019) (quoting *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005)).  In *Mesa Valderrama*, the Eleventh Circuit held that the district court "correctly determined that it did not have jurisdiction to review [plaintiff's] challenges to the merits" of an administrative forfeiture because "the court's review 'is limited to determining whether the agency followed the proper procedural safeguards'" when it forfeited the plaintiff's property.  417 F.3d at 1196 (quoting *Scarabin v. Drug Enf't Admin.*, 919 F.2d 337, 338 (5th Cir. 1990)).

[10]  In a summary order issued over a year after *Vazquez-Alvarez*, the Second Circuit also held that "the general rule is that 'a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun.'" *United States v. Cobb*, 646 F. App'x 70, 72 (2d Cir. 2016) (quoting *U.S. (Drug Enf't Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 480 (2d Cir. 1992)).  The Court did not explicitly hold that section 983(e) is a jurisdiction-stripping statute or revisit its holding in *Vazquez-Alvarez*.

This Court applies the Second Circuit's holding in *Vazquez-Alvarez* that "'[t]he provisions of § 983 are procedural rules for pursuing the forfeiture of seized assets,' not 'conditions of subject matter jurisdiction.'" 760 F.3d at 198 (quoting *Wilson*, 699 F.3d at 795). Because section 983(e) is a claim-processing rule and not a condition of subject matter jurisdiction, the Court analyzes Defendants' motion under Rule 12(b)(6) and considers whether Plaintiffs have demonstrated that they are entitled to equitable tolling. *See Phillips v. Lynch*, No. 15-CV-1514, 2016 WL 3248307, at *5 (E.D.N.Y. June 9, 2016) (holding that, because statute at issue was "not jurisdictional," the defendants' motion to dismiss was "properly analyzed under Rule 12(b)(6), not Rule 12(b)(1)" and the plaintiff's claim was "subject to equitable tolling"), *aff'd sub nom. Phillips v. Boente*, 674 F. App'x 106 (2d Cir. 2017); *see also United States v. Wong*, 575 U.S. 402, 409 (2015) ("[W]e have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much." (second alteration in original) (quoting *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013))); *Cobar*, 2014 WL 1303110, at *6 ("A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)." (citation omitted)).

### c. The Court converts the motion to dismiss to a motion for summary judgment

In support of their various arguments, the parties rely on additional evidence in declarations and exhibits annexed to their submissions.[11] The Court exercises its discretion to

---

[11] In support of their motion to dismiss, Defendants rely on facts set forth in declarations and exhibits annexed to their papers. (*See* Decl. of Vicki L. Rashid ("Rashid Decl."), Docket Entry No. 11-3; Rashid Decl. Exs. 1–29, Docket Entry No. 11-4; Decl. of Michelle O'Toole ("O'Toole Decl."), Docket Entry No. 11-5; Decl. of Michael D. Cooke ("Cooke Decl."), Docket Entry No. 26-1. In addition, Plaintiffs rely on facts set forth in declarations and exhibits annexed to their opposition papers. (*See* Decl. of Eugenia Sclafani ("E. Sclafani Decl."), Docket

convert Defendants' motion into a motion for summary judgment. *See Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) ("If 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss, Federal Rule of Civil Procedure 12(d) provides that 'the motion must be treated as one for summary judgment under Rule 56." (quoting Fed. R. Civ. P. 12(d))); *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 291 (E.D.N.Y. 2015) ("When materials are submitted on a motion to dismiss that are outside of the pleadings, the Court has discretion to either exclude these materials or convert the motion to dismiss into a motion for summary judgment."), *aff'd*, 670 F. App'x 731 (2d Cir. 2016); *see also Steadfast Ins. Co. v. T.F. Nugent Inc.*, 513 F. Supp. 3d 419, 423 n.2 (S.D.N.Y. Jan. 15, 2021) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." (alterations in original) (quoting *Abbey v. 3F Therapeutics, Inc.*, No. 06-CV-409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009))).  In converting a motion to dismiss, "[t]he essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Clark*, 89 F.4th at 94 (first alteration in original) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985), *cert. denied*, 475 U.S. 1015 (1986)); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting the same); *see also Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) ("[A] district court acts properly in converting a motion . . . into a motion for

---

Entry No. 18-1; Decl. of Ramona Rizzo ("Rizzo Decl."), Docket Entry No. 18-2; Decl. of Stacey Sclafani ("S. Sclafani Decl."), Docket Entry No. 18-3.)

summary judgment when the motion presents matters outside the pleadings" and the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." (alteration in original) (quoting *Hernández v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009))).

Defendants "warned [Plaintiffs] that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." (Local Civ. R. 12.1 Notice to Pro Se Litigant Opposing Mot. to Dismiss, Docket Entry No 12-1.) Plaintiffs therefore "had ample warning that [they] needed to respond to the motion and ample time to submit evidence (which [they] did)." *Malaney v. Elal Isr. Airlines*, 331 F. App'x 772, 774 (2d Cir. 2009). Plaintiffs submitted additional declarations and exhibits to oppose Defendants' motion to dismiss and to support Plaintiffs' request for equitable tolling. (*See* E. Sclafani Decl.; Rizzo Decl.; S. Sclafani Decl.); *cf. Hood v. Catholic Health Sys., Inc.*, No. 20-CV-673, 2020 WL 8371205, at *3 (W.D.N.Y. Sept. 28, 2020) ("[I]t is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue." (quoting *Hoffkins v. Monroe-2 Orleans Boces*, No. 06-CV-6403, 2007 WL 1288210, at *2 (W.D.N.Y. May 2, 2007))). In addition, Plaintiffs did not object to Judge Pollak's reliance on extrinsic evidence in her R&R. (*See generally* Pls.' Objs.).

Thus, Plaintiffs "received sufficient notice" such that conversion of Defendants' motion is appropriate. *Malaney*, 331 F. App'x at 774; *see also Mayo v. Fed. Gov't*, 558 F. App'x 55, 56 (2d Cir. 2014) (finding that magistrate judge "properly converted the motions before it into motions for summary judgment" where "the defendants provided [plaintiff] with unequivocal notice of the court's ability to treat their motions as motions for summary judgment," and plaintiff was "afforded the opportunity to submit further evidence, and took advantage of that opportunity" (citing *Hernández*, 582 F.3d at 307–08)); *Mathie v. Dennison*, 381 F. App'x 26, 27

17

(2d Cir. 2010) ("[T]he district court's conversion of the motion was appropriate because Appellant was provided sufficient notice of the possible conversion to have not been taken by surprise, and had the opportunity, of which he took advantage, to file additional evidence." (citing *G. & A. Books*, 770 F.2d at 294–95)).

> ### d. Plaintiffs' claims are time barred and there is no factual basis to support equitable tolling

Defendants argue that Plaintiffs' claims of inadequate notice are barred by CAFRA's five-year statute of limitations. (Defs.' Mem. 16–17.) Defendants also argue that equitable tolling is not appropriate because Plaintiffs did not act diligently in seeking relief under section 983(e), and Plaintiffs' cited circumstances are not "extraordinary circumstances" warranting equitable tolling. (Defs.' Reply 3–8.)

 Plaintiffs argue that equitable tolling is warranted because they "acted with diligence and brought [their] motion promptly after [discovering] that the government had led their then-counsel down a tunnel with no light at either end." (Pls.' Opp'n 12.) Plaintiffs offer several reasons to justify their delay in filing: (1) Defendants "caused much of the delay by not responding to [Plaintiffs' claims to the Seized Jewelry] and making unreasonable requests for additional information"; (2) the incarceration of Joseph Sclafani, the death of Plaintiff Eugenia Sclafani's husband, Augustus Sclafani, and "the family turmoil encountered by Ramona Rizzo" establish "extraordinary circumstances beyond [Plaintiffs'] control"; and (3) Plaintiffs "relied to their detriment on counsel's delay over a long period of time." (*Id.* at 12–14; *see also* E. Sclafani Decl.; Rizzo Decl.)

CAFRA provides a five-year statute of limitations for challenging forfeitures. 18 U.S.C. § 983(e); *see Cobar*, 2014 WL 1303110, at *4 ("[CAFRA] provides that a motion to set aside a declaration of administrative forfeiture 'may be filed not later than [five] years after the date of

final publication of notice of seizure of the property.'" (first alteration in original)); *Ramirez de Sarrazola*, 2006 WL 1806506, at *3 ("CAFRA established a five year statute of limitations for challenges to forfeitures.").  The limitations period starts on the date of the final publication of the notice of seizure of property.  18 U.S.C. § 983(e)(1); *Hayes v. United States*, No. 08-CV-6525, 2009 WL 1867965, at *2 (S.D.N.Y. June 29, 2009); *Ramirez de Sarrazola*, 2006 WL 1806506, at *3 ("CAFRA marks the start of the limitations period at the date of the final publication of the notice of seizure of property.").

However, the doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir 1998); *see also Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000))). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *see also Doe*, 76 F.4th at 71 (noting that a party seeking equitable tolling "must demonstrate . . . that some extraordinary circumstance stood in [her] way and . . . that [she] has been pursuing [her] rights diligently." (alterations in original) (internal quotation marks and citation omitted)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))); *see also Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the

19

plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" (alterations in original) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))).  "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."  *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (rejecting party's late filing because equitable tolling of exhaustion time applies only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (quoting the same).

### i.   Plaintiffs' claims are untimely

Plaintiffs do not dispute that their claims are untimely.  (*See generally* Pls.' Opp'n.)  The statute of limitations began to run on October 31, 2011, when the DEA published its third and final notice of seizure in *The Wall Street Journal*, but Plaintiffs did not bring this action until May 16, 2017 — over six months after CAFRA's five-year statute of limitations had lapsed.  (*Compare* Rashid Decl. ¶ 4(g) & Ex. 11 (notices of seizure were published in *The Wall Street Journal* on October 17, 24, and 31, 2011), *with* Pls.' Mot. (filed on May 16, 2017)); *see also Hayes*, 2009 WL 1867965, at *2 ("[The] [p]laintiff's claims are time-barred under CAFRA's five-year statute of limitations because '[t]he final notice of seizure was published in the *Wall Street Journal* on September 4, 2001' and 'this action was not commenced before September 4, 2006.'" (third alteration in original)); *see also Can v. U.S. Drug Enf't Agency*, 764 F. Supp. 2d 519, 521 (W.D.N.Y. 2011) (finding the plaintiff's "failure to file this complaint within the five years statute of limitations requires that the complaint be dismissed" because the final

20

publication of the notice of seizure was made in the *Wall Street Journal* on August 23, 2004, and

the complaint was not filed until September 23, 2009).

### ii.   Plaintiffs are not entitled to equitable tolling

In addition, Plaintiffs are not entitled to equitable tolling because they have not shown

they pursued their claims diligently.  After the DEA published its final notice of seizure in *The*

*Wall Street Journal* on October 31, 2011, (Rashid Decl. ¶ 4(g) & Ex. 11), Ramona and Eugenia

exchanged several letters with the DEA regarding their claimed interest in the Seized Jewelry

through their attorney, Timothy C. Parlatore, Esq.  (Rashid Decl. ¶¶ 4(i)–4(s) & Exs. 13–23).  In

relevant part, on January 30, 2012, the DEA received correspondence from Parlatore on behalf of

Ramona, Eugenia, and Augustus requesting the return of forty-five pieces of jewelry.  (Rashid

Decl. ¶ 4(1) & Ex. 17.)  In a letter dated February 15, 2012, the DEA advised Ramona, Eugenia,

and Augustus that, although their time to submit claims had passed, it would consider their letter

as a petition for remission or mitigation of the forfeiture.  (Rashid Decl. ¶ 4(m) & Ex. 19.)  On

May 17, 2012, the DEA forfeited the Seized Jewelry after determining that it had not received

any timely or properly executed claims.  (Rashid Decl. ¶ 4(p) & Ex. 24.)  On October 15, 2012,

the DEA sent a letter to Parlatore to inform Eugenia, Ramona, and Augustus that it had denied

their petition to remit or mitigate the forfeiture.  (Rashid Decl. ¶ 4(q) & Ex. 26.)  Ramona,

Eugenia, and Augustus requested that the DEA reconsider its decision on November 21, 2012

(Rashid Decl. ¶ 4(r) & Ex. 27), which the DEA denied on July 14, 2015 (the "July 2015

Denial"), (Rashid decl. ¶ 4(s) & Ex. 29.)  The parties did not exchange any further

correspondence.

When the DEA sent the July 2015 Denial to Plaintiffs' then-counsel on July 14, 2015,

approximately one year and three months remained on the statute of limitations.[12]  Plaintiffs did

not commence this action until May 17, 2017, approximately one year and eight months after the

July 2015 Denial and approximately six months after the statute of limitations had lapsed.  (*See*

Pls.' Mot.)  Plaintiffs do not explain how they diligently pursued their claims to the Seized

Jewelry during the one year and eight-month period between the July 2015 Denial and their

commencement of this action.  *See Mitchell v. Miller*, No. 21-CV-4744, 2022 WL 17544534, at

*7 (S.D.N.Y. Dec. 9, 2022) ("That [plaintiff] 'waited far longer than a year to take action runs

afoul of the principle adopted by a number of courts, which generally have found that periods of

delay lasting for more than a year do not exhibit due diligence.'" (quoting *Samo v. Keyser*, 305

F. Supp. 3d 551, 562 (S.D.N.Y. 2018)); *see also Polanco*, 158 F.3d at 655 (plaintiff seeking

equitable tolling "must show that he 'pass[ed] with reasonable diligence through the period [he]

seeks to have tolled'" (alterations in original) (quoting *Johnson*, 86 F.3d at 12)); *Florio v.

Cuomo*, No. 10-CV-998, 2010 WL 5222123, at *12 (S.D.N.Y. Nov. 16, 2010) ("Inaction over

. . . an extended period of time does not justify the rare remedy of equitable tolling.").

Moreover, Plaintiffs have not shown any "extraordinary circumstances" that warrant

equitable tolling.  Plaintiffs do not offer any support for their argument that Defendants' delays

and deception caused Plaintiffs' delay.  (*See* Pls.' Opp'n 12–13 (citing *Munchinski v. Wilson*,

694 F.3d 308 (3d Cir. 2012)).)  They have not shown that Defendants took steps to mislead

Plaintiffs as to their rights or the timing of their motion.  *See Bachand v. Saul*, 778 F. App'x 74,

---

[12]  CAFRA provides that a motion to set aside an administrative forfeiture "may be filed
not later than 5 years after the date of final publication of notice of seizure of the property."  18
U.S.C. § 983(e)(3).  Accordingly, "CAFRA marks the start of the limitations period at the date of
the final publication of the notice of seizure of property."  *Ramirez de Sarrazola*, 2006 WL
1806506, at *3.  Because the DEA published the final notice of forfeiture in *The Wall Street
Journal* on October 31, 2011, the statute of limitations lapsed five years after that date, on
October 31, 2016.  (*See* Rashid Decl. ¶ 4(g) & Ex. 11.)

75 (2d Cir. 2019) ("We will toll a statute of limitations for government misconduct only 'in those cases where the government has hindered a claimant's attempts to exercise her rights by acting in a misleading or clandestine way.'" (quoting *Wong v. Bowen*, 854 F.2d 630, 631 (2d Cir. 1988))).

In addition, the death of Augustus Sclafani and the incarceration of Joseph Sclafani do not constitute "extraordinary circumstances."  Plaintiffs contend that both events had a significant impact on their lives.  (Pls.' Opp'n 6, 13.)  Ramona states that the events left "a huge hole in the fabric of [her] life" and threw her life "into upheaval and uncertainty," while Eugenia states that the events "[threw her] life into a state of chaos [she] had never dealt with."  (*See* Rizzo Decl. ¶¶ 11–15; E. Sclafani Decl. ¶¶ 6–12).  However, both events occurred several years before Plaintiffs commenced this action.  (Defs.' Mem. 2 ("On or about August 10, 2011, DEA agents arrested Joseph Sclafani."); E. Sclafani Decl. ¶ 10 (noting that Augustus Sclafani passed away on November 19, 2013).)  Plaintiffs do not offer any explanation as to how the events rendered Plaintiffs unable to file their motion until May 17, 2017.  Nor have Plaintiffs provided any authority to support their position that the medical or mental conditions of a third party — as opposed to Plaintiffs themselves — constitute "extraordinary circumstances" sufficient to justify equitable tolling.  *See Thomas v. Burmax Co.*, No. 12-CV-6363, 2013 WL 6681616, at *4 (E.D.N.Y. Dec. 18, 2013) (collecting cases for the proposition that family death or illness do not qualify for equitable tolling).

Finally, Plaintiffs fail to factually support their claim that their former attorney's alleged malpractice caused the delay.  (Pls.' Opp'n 12.)  Plaintiffs do not allege that they directed their former attorney to file a motion to set aside the forfeiture or that counsel failed to communicate with Plaintiffs.  Plaintiffs have therefore not established that that their former attorney's conduct created "extraordinary circumstances" sufficient to justify equitable tolling.  *See Lawrence v.*

*Florida*, 549 U.S. 327, 336–37 (2007) (finding that an attorney's miscalculation of the limitations period was "not sufficient to warrant equitable tolling"); *Joaquin v. Smith*, No. 21-CV-9372, 2023 WL 2237798, at *4 (S.D.N.Y. Feb. 27, 2023) ("[A]ttorney negligence is not, *per se*, a basis for equitable tolling."); *see also Troconis-Escovar*, 59 F.4th at 278–79 (explaining that an "attorney [who] made a mistake and did not recognize his error until months after the deadline had passed" was "not reason for courts to exercise their equitable powers to override statutory requirements"); *Okafor*, 846 F.3d at 340 (noting that "an attorney's filing by mail shortly before a deadline expires constitutes routine negligence" insufficient to justify equitable tolling).

Accordingly, the Court finds that Plaintiffs fail to allege facts in support of the application of equitable tolling. Plaintiffs' claims are therefore barred by CAFRA's five-year statute of limitations, and for this reason, the Court grants Defendants' motion for summary judgment.

### e. Defendants provided interested parties with proper notice of the forfeiture proceedings

Defendants argue that in addition to being time-barred, Plaintiffs' claims should be dismissed on the merits because (1) Eugenia and Ramona received proper notice, and (2) Stacey had no cognizable interest in the Seized Jewelry and therefore the DEA was not required to provide notice to her. (Defs.' Mem. 17–20.)

Plaintiffs do not dispute the evidence and do not object to Judge Pollak's recommendation that the Court deny Plaintiffs' motion because Plaintiffs cannot show that Defendants did not provide reasonable notice under section 983(e).[13] (R&R 26–27.)

---

[13] The Court nevertheless reviews the adequacy of notice *de novo* having determined that the motion should be considered pursuant to Rule 12(b)(6) rather than Rule 12(b)(1).

In determining whether the government gave adequate notice under CAFRA, "[t]he overriding constitutional question . . . is whether notice of the forfeiture comports with the Due Process Clause of the Fifth Amendment." *Brome*, 942 F.3d at 552. The Due Process clause requires "that the Government provide notice that is 'reasonably calculated under all the circumstances' to apprise the [claimant] of both the 'pendency of the . . . forfeiture' and the [claimant's] right to contest it." *Id.* (quoting *Dusenbery v. United States*, 534 U.S. 161, 168 (2002)); *see also Huerta Consulting Servs., LLC v. Drug Enf't Admin.*, No. 21-CV-2310, 2022 WL 2788399, at *3 (S.D.N.Y. July 15, 2022) (explaining that courts "determin[ing] whether the DEA reasonably notified [a plaintiff] about the seizure of [their] property" must "assess[] the 'reasonableness under the circumstances' of the notice" (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 399 U.S. 306, 319 (1950))). "[T]he Government does not need to 'provide actual notice'; it is enough that it 'attempt to provide actual notice.'" *Brome*, 942 F.3d at 552 (quoting *Dusenbery*, 534 U.S. at 170).

### i.    Defendants gave proper notice to Eugenia and Ramona

Defendants sent certified mail to the known addresses of Eugenia and Ramona on October 5, 2011. (Defs.' Mem. 18; Rashid Decl. Exs. 5, 6, 9, 10, 12 (notices of seizure sent to Eugenia Sclafani and Ramona Rizzo.) Defendants also published notice in *The Wall Street Journal* on October 17, 24, and 31, 2011.[14] (Defs.' Mem. 18–19; Rashid Decl. Ex. 11 (copies of notices published in October 17, 24, and 31 editions of *The Wall Street Journal*).) Accordingly, Defendants provided adequate notice to Eugenia and Ramona. *Huerta Consulting Servs.*, 2022

---

[14] Moreover, Defendants had every reason to believe that Plaintiffs received notice because Plaintiffs "subsequently filed multiple claims." (Defs.' Mem 5–10 (discussing correspondence between Plaintiffs and the DEA); Rashid Decl. Exs. 13–29 (letter correspondence between the DEA and Plaintiffs regarding the Seized Jewelry).)

WL 2788399, at *3 (finding that a "written notice [sent], via certified mail, to the known addresses of known claimants," and "published notice for a period of thirty days for the benefit of unknown claimants, ordinarily satisfies the [notice requirement]" (internal quotation marks and citation omitted)).

### ii.   Defendants were not required to provide notice to Stacey

Stacey claims an interest in three pieces of jewelry that "belonged to [her] late father," Augustus Sclafani.  (S. Sclafani Decl. 1.)  Stacey claims that her "father would have wanted [her] to be able to pass these very sentimental items down to [her] and his grandchildren."  (*Id.*)

The court must "look to state law to determine whether a property interest exists" in the seized property.  *Lucas*, 775 F.3d at 548.  Under New York law, "no one can be heir to another person until his decease."  *Heard v. Horton*, 1 Denio 165, 168 (N.Y. Sup. Ct. 1845); *Dodin v. Dodin*, 40 N.Y.S. 748, 751 (N.Y. Sup. Ct. 1896) ("[T]he right of inheritance . . . accrues only at the moment of the decease of the intestate.  Prior to that time, the absolute ownership, with all its incidents, rests in him."); *see also Irving Trust Co. v. Day*, 314 U.S. 556, 562 (1942) ("Expectations or hopes of succession, whether testate or intestate, to the property of a living person, do not vest until the death of that person."); *LaMie v. Wright*, No. 12-CV-1299, 2014 WL 1686145, at *15 (W.D. Mich. Apr. 29, 2014), *report and recommendation adopted*, No. 1:12-CV-1299, 2014 WL 3341587 (W.D. Mich. July 8, 2014) ("It is a fundamental tenet of Anglo–American jurisprudence that the living have no heirs ('*Nemo est haeres viventis*').").

Stacey does not assert any interest in the Seized Jewelry entitling her to notice.  At the time Defendants sent notice of the administrative forfeiture proceedings on October 5, 2011, (Defs.' Mem. 2; Rashid Decl. ¶¶ 4(b)–4(c)), Augustus was still alive, (*see* E. Sclafani Decl. ¶ 14 ("On November 19, 2013, Augustus Sclafani passed away from his illness.")).  Therefore, at the

26

time the DEA sent notices, it was Augustus — and not Stacey — who had an interest in the jewelry Stacey claims to have inherited.  *See United States v. Four Hundred Seventy Seven (477) Firearms*, 698 F. Supp. 2d 894, 900–01 (E.D. Mich. 2010) (finding that asserted interest "based on [plaintiffs'] expectation that their father would leave the [seized property] to them when he died" was "not a 'legally cognizable interest'" (quoting *United States v. $267,961.07*, 916 F.2d 1104, 1107 (6th Cir. 1990)).  The DEA sent notices to Augustus,[15] meaning that the owner of the three pieces of jewelry was properly notified of their seizure.  (Defs.' Mem. 4; Rashid Decl. Ex. 7 (October 5, 2011 notice sent to "Gus" Sclafani).)  Plaintiffs have not established that Stacey had an independent interest in the Seized Jewelry requiring Defendants to provide her with notice of the forfeiture.

Thus, in addition to being barred by the statute of limitations, Plaintiffs' claims also fail because Plaintiffs have not demonstrated that Defendants did not provide adequate notice to interested parties.  Accordingly, the Court grants Defendants' motion for summary judgment on the alternative ground that Defendants provided adequate notice.

     **f.  The Court denies Plaintiffs' request to declare them the rightful owners of the Seized Jewelry, and to direct Defendants to identify the purchasers of the Seized Jewelry**

In addition to their notice-based challenge to the forfeiture, Plaintiffs argue that the Court may exercise its equitable jurisdiction to grant them relief in addition to the relief CAFRA provides.  (Pls.' Opp'n 15).  Plaintiffs seek (1) a declaration that "the CAFRA forfeiture

---

[15]  On October 5, 2011, the DEA mailed a notice of seizure to "Gus Sclafani" at the 71 Wheeling Avenue Residence.  (Rashid Decl. ¶ 4(e) & Ex. 7.)  Other than Augustus Sclafani, the only residents at the 71 Wheeling Avenue Residence were Eugenia Sclafani, Joseph Sclafani, and Ramona Rizzo, who each were sent separate notices.  (*See* Pls.' Mot. 7, 9–10; Rashid Decl. ¶¶ 4(b), 4(d), 4(f) & Exs. 1, 5, 7, 9.)  In addition, Defendants published notice in *The Wall Street Journal* on October 17, 24, and 31, 2011.  (Rashid Decl. ¶ 4(g) & Ex. 11.)

declaration was invalid" and that Plaintiffs "are the true owners" of the Seized Jewelry, and (2) an order directing the government to identify purchasers of the Seized Jewelry so that Plaintiffs can bring actions against them as permitted by state law.  (*Id.* at 15.)

Defendants argue that: (1) the equitable relief Plaintiffs seek is precluded by CAFRA's pronouncement that section 983(e) is the "exclusive remedy for seeking to set aside a declaration of forfeiture," (Defs.' Reply 8–9); (2) directing the government to disclose the purchasers of the Seized Jewelry is barred by the doctrine of sovereign immunity, (*id.* at 9–10); and (3) Plaintiffs have an adequate remedy at law in the form of a pending malpractice action against their former attorney, (*id.* at 10).

The Court denies Plaintiffs' requests for equitable relief beyond the relief afforded by CAFRA.  In order to consider Plaintiffs' request that the Court declare them the rightful owners of the Seized Jewelry, the Court would be required to review the merits of the administrative forfeiture decision.  (*See, e.g.*, Pls.' Mot. 6–11 (arguing that Plaintiffs are "innocent owners" under 18 U.S.C. 983(d))); *see also Cobar*, 2014 WL 1303110, at *10 (declining to consider plaintiff's argument that the government's "seizure of the [property] was improper in the first instance" because "the [c]ourt may not review the merits of [p]laintiff's challenges to the forfeiture of the [property]").  CAFRA does not permit such review.  *See United States v. Cobb*, 646 F. App'x 70, 72 (2d Cir. 2016) ("[CAFRA] explicitly permits the court to consider only the issue of adequate notice." (citing 18 U.S.C. § 983(e)(1))).  Where a plaintiff demonstrates lack of proper notice, the court can only set aside the declaration of forfeiture for lack of notice, without prejudice to the government's right to re-institute forfeiture proceedings against the Seized Jewelry.  *See Alli-Balogun*, 281 F.3d at 369 n.6 (explaining that a district court may set-aside a declaration of forfeiture "without prejudice to the right of the Government to commence a

subsequent forfeiture proceeding" (quoting 18 U.S.C. § 983(e)(2)(A))).  As set forth above, Plaintiffs have not shown that Defendants failed to provide adequate notice of the forfeiture proceedings to interested parties.  (*See supra* section II.e.)  Thus, Plaintiffs are not entitled to any relief under CAFRA, which is the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."  *Brome*, 942 F.3d at 552 (quoting 18 U.S.C. § 983(e)(5)).

In addition, Plaintiffs have failed to establish that the Court has the authority to direct Defendants to identify the purchasers of the Seized Jewelry.  *See Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) ("[W]here the federal government is itself sued, the available remedies are not those that are appropriate, but only those for which sovereign immunity has been expressly waived." (internal quotation marks omitted) (quoting *Lane v. Pena*, 518 U.S. 187, 197 (1996))).  Because Plaintiffs have not established that CAFRA provides any remedy other than the Court's ability to "set[] aside a declaration of forfeiture due to inadequate notice to a party with an interest in the forfeiture," *Alli-Balogun*, 281 F.3d at 369 n.6, the Court denies Plaintiffs' request for relief other than the relief CAFRA provides.  *See, e.g.*, *Smith v. Potter*, 187 F. Supp. 2d 93, 98 (S.D.N.Y. 2001) (denying injunctive relief sought under the FTCA because "Congress has not waived the government's sovereign immunity for tort claims . . . that seek injunctive relief against the USPS").

### III. Conclusion

For the reasons stated above, the Court grants summary judgment to Defendants and

denies Plaintiffs' requests to declare them the rightful owners of the Seized Jewelry and to order

Defendants to disclose the identities of the purchasers of the Seized Jewelry.

Dated: March 14, 2024
   Brooklyn, New York

        SO ORDERED:


        _____S/MKB_____
        MARGO K. BRODIE
        United States District Judge